NETWORK PUBLISHING CORPORA-
TION and Providence Journal
Company, Appellants,

v.

Jerome SHAPIRO and Angela
Shapiro, Appellees.

No. 531, Docket 89–7692.

United States Court of Appeals,
Second Circuit.

Argued Dec. 18, 1989.

Decided Feb. 1, 1990.

Donald M. Olasov, Edwards & Angell,
New York City, for appellants.

Solomon H. Friend, Friend, Marks &
Schlussel, Great Neck, N.Y., for appellees.

Before OAKES, Chief Judge,
PRATT, Circuit Judge, and SAND,
District Judge.*

OAKES, Chief Judge:

This is an appeal by Network Publishing
Corporation ("Network") from a final judg-
ment entered on June 8, 1989, by the Unit-
ed States District Court for the Southern
District of New York, Pierre N. Leval,
Judge, in a suit against Jerome and Angela
Shapiro seeking indemnification for several
breaches of a stock purchase agreement.
We affirm in part and vacate and remand
in part.

The stock purchase agreement (the
"Agreement") set out the terms for the
purchase by Network (formerly the Prov-
idence Journal Company and its subsidiary,
Providence Communications, Inc., which

* Of the United States District Court for the South-    ern District of New York, sitting by designation.

was the designated "purchaser" of stock under the Agreement) of all of the stock of S.O.D. Publishing, Inc. (the "Company"). The Company is the publisher of the magazine "Soap Opera Digest," well known to subscribers and those who stand in line at supermarkets for its synopses of daytime television serial dramas and its features on "soap opera" stars. The sale was negotiated in the spring and summer of 1980 and closed on August 28, 1980.

Network seeks to recover under an indemnification provision in the Agreement that the parties specified as the sole avenue of recovery for any breaches of representations, warranties, or covenants by the Shapiros. The indemnification provision states that the Shapiros shall:

> indemnify the Company, the Purchaser [Providence Communications, Inc.] and the Journal against and hold them harmless from any and all liabilities in respect of suits, proceedings, demands, judgments, damages, expenses and costs ... which the Purchaser or the Company may suffer or incur by reason of ... (ii) breaches or inaccuracies in the representations, warranties and covenants made by the Stockholders in this Agreement....

The key language in this provision is that indemnification is available only for "liabilities" incurred by reason of such breaches or misrepresentations.

The next sentence in the indemnification provision sets up a payment mechanism by which indemnification liabilities owing to Network are to be set off against the remaining purchase price still owed by Network:

> Any amount which is due and owing to the Purchaser and/or the Journal from the Stockholders under this [indemnification provision] ... shall be payable to the Purchaser or the Journal, as the case may be, after satisfaction of such amounts to third parties, by the Purchaser or the Journal setting off such amount against the then remaining obligations of the Purchaser and/or the Journal to the Stockholders....

At trial, Network tried to prove that the Shapiros breached several warranties by failing to disclose or to state accurately (1) certain liabilities owing to third parties; (2) circulation figures; (3) profitability statistics; and (4) the use of certain discounts to induce advertising. By an order dated July 28, 1984, the district court dismissed any claims based on the last three of these breaches on grounds that, although the Shapiros might have breached the warranties, and Network might have been harmed, Network's losses were not "liabilities" owing to third parties, and therefore were not covered by the indemnification provision.

The district court order left open the question of damages for breach of the warranty regarding undisclosed liabilities to third parties. There were three types of liabilities that were not disclosed, as required by the Agreement, by March 31, 1980: (1) accounts payable; (2) display rack charges owing to a distributor; and (3) retail display allowances to dealers. By an order dated May 2, 1986, the district court concluded, on the basis of the payment-mechanism language quoted above, that the contract only allowed recovery for undisclosed accounts payable paid off to third parties *by Network*. To put it differently, it disallowed recovery for accounts payable that were undisclosed as of March 31, 1980, but paid out by the Company prior to closing on August 28, 1980. Because the Company's intrinsic value was reduced by the Company's having paid off these accounts payable, Network received less on closing day than what it thought it had bargained for. The district court found this result "troublesome," but concluded that this was what the parties had intended. On this same basis, and after further submissions by the parties, the district court, by an order dated March 13, 1989, also disallowed the bulk of Network's indemnification claims for display rack charges and retail display allowances.

On this appeal, Network disputes the district court's findings, first, that the term "liabilities" as used in the Agreement includes only sums owing to third parties, and, second, that indemnification is due

only for liabilities paid after closing by Network.

## DISCUSSION

■ The interpretation of a contract is generally a question of law and subject to our de novo review. *See Eddy v. Prudence Bonds Corp.*, 165 F.2d 157, 163 (2d Cir.1947) (L. Hand, J.) ("[A]ppellate courts have untrammelled power to interpret written documents." (footnote omitted)), *cert. denied*, 333 U.S. 845, 68 S.Ct. 664, 92 L.Ed. 1128 (1948). On the other hand, the district court's findings regarding extrinsic evidence and credibility determinations are in the nature of findings of fact, *see West v. Smith*, 101 U.S. 263, 270, 25 L.Ed. 809 (1879), and therefore subject to "clear error" review under Federal Rule of Civil Procedure 52(a).

■ "[W]e must consider the words [of a contract] themselves for they are always the most important evidence of the parties' intention." *Eddy*, 165 F.2d at 161. The language of the Agreement at issue here makes clear that "liabilities" as used in the indemnification provision means sums due and owing to third parties. The term is modified by words implying claims from third parties: "liabilities *in respect of suits, proceedings, demands, judgments, damages, expenses and costs*" (emphasis added). The next sentence in the Agreement specifies that indemnification is payable only "after satisfaction of such amounts to third parties." Because the contract conditions indemnification on actual payment to third parties, we cannot accept Network's argument in its reply brief that it employed the term "liabilities" in its archaic sense to extend indemnification irrespective of whether actual loss was suffered. Elsewhere in the contract, where the term "liabilities" is used, it connotes obligations to third parties. Section 8.2(a), for example, provides indemnification not only for liabilities arising from breaches of warranties and representations, but also for "any liabilities attaching to or constitut-

ing a lien against the assets of the Company." Similarly, in section 4.17, titled "Liabilities," the Company represents that as of March 31, 1980, it had "no material liabilities or obligations of any nature, whether accrued, absolute, contingent or otherwise, including without limitation, tax liabilities...."

The parol evidence considered by the district court does not change this result.[1] A letter of intent employed the term "losses," but the parties, who were found to have negotiated extensively over the indemnification provision, later changed the term to "liabilities."

We therefore agree with the district court that "liabilities" includes only sums owed to third parties, and affirm the district court's dismissal of claims with respect to the warranties of circulation, profitability, and discount advertising.

■ We are unable to agree, however, with the district court that the contract allowed indemnification only for undisclosed liabilities paid after closing by Network, but not those liabilities hidden from Network and paid by the Company or the Shapiros prior to closing. Considering this issue with respect to undisclosed accounts payable, the district court stated:

The instant dispute is troublesome. There is no question that the account payable was a "liability" as the term is used in § 8.2(a). Had the accounts remained outstanding and payable when Purchaser took over SOD [the Company] at the closing, plaintiffs would unquestionably be entitled to indemnity. But these were not so payable after the closing, having been paid by sellers between March 31, 1980 and the signing-closing of the contract on August 28, 1980. Accordingly, although these accounts were liabilities payable to third parties, they were not "liabilities ... which the Purchaser or the Company incur[red]." (§ 8.2(a).) The Purchaser was not entitled to indemnification except "after sat-

---

1. Although the district court found the meaning of "liability" unambiguous, it nevertheless considered parol evidence and found that such par-

ol evidence did not alter the result. Therefore, we do not consider Network's argument that the district court failed to consider parol evidence.

isfaction of such amounts to third parties *by the Purchaser....*" (§ 8.2(a).)

We take particular exception to the last two sentences above. The penultimate sentence concludes that the accounts payable (and, by implication, the other undisclosed liabilities) paid off prior to closing were not liabilities which the Company incurred. We believe the district court was mistaken in reaching this conclusion. The accounts payable, as well as the other undisclosed liabilities, undoubtedly were liabilities incurred by the Company, even if they were not liabilities incurred by Network, because the closing had not yet occurred. Neither the contract nor the district court's order indicate, as appellees urge, that the term "Company" refers only to the Company once it was owned by Network. The plain language of the indemnification provision indicates coverage of all liabilities incurred by the Company, without qualification as to who owns it or at what point in time.

The final sentence does not accurately quote the language from the contract to support its conclusion that indemnification extended only to liabilities paid by Network. The district court omitted a critical comma. The relevant language actually states that indemnification shall be payable to Network "after satisfaction of such amounts to third parties, by the Purchaser or the Journal setting off such amount against the then remaining obligation of the Purchaser" (emphasis added). With the comma properly inserted, the phrase "after satisfaction of such amounts to third parties" is not directly linked to Network's making the payment. The phrase is directed at ensuring payments for debts that are real and not illusory, regardless of who pays or when they are paid. Because the district court provides no other reasons for its interpretation, and no other language in the contract supports that interpretation, we can only conclude that the district court

was led to the wrong conclusion by its omission of the critical comma.[2]

Because the district court's interpretation barring indemnification for liabilities undisclosed as of March 31, 1980, but paid prior to closing on August 28, 1980, produces an anomalous result, and no evidence indicates that the parties so intended, we remand to the district court for recalculation of amounts owed to Network for indemnification.

Judgment reversed; cause remanded.

---

**2.** The Shapiros direct us to trial testimony purportedly demonstrating that indemnification was conditioned on payment by Network to third parties. This testimony dealt only with the more likely scenario that undisclosed liabilities, if any, would be discovered and unpaid after closing. None of the testimony was directed to the unlikely event of undisclosed liabilities being paid prior to closing; much less did this testimony specifically exclude the right of indemnification in such circumstances.