**WERBUNGS UND COMMERZ UNION AUSTALT, Plaintiff–Appellee,**

v.

**COLLECTORS' GUILD, LTD., Defendant–Appellant.**

**No. 1365, Docket 90–7110.**

United States Court of Appeals, Second Circuit.

Argued May 9, 1990.

Resubmitted Dec. 7, 1990.

Decided April 18, 1991.

Alvin K. Hellerstein (Winifred A. San-
dler, Strook & Strook & Lavan, New York
City, of counsel), for defendant-appellant.

Robert W. Cinque (James P. Cinque, Cin-
que and Cinque, New York City, of coun-
sel), for plaintiff-appellee.

Before ALTIMARI and MAHONEY,
Circuit Judges, and CARTER, Senior
District Judge.*

ALTIMARI, Circuit Judge:

The dispute in the underlying action cen-
ters upon the allocation of profits earned
by defendant-appellant Collectors' Guild,

* The Honorable Robert L. Carter, of the United
States District Court for the Southern District of    New York, sitting by designation.

Ltd. ("Collectors' Guild") from the sale of
lithographic reproductions of illustrations
created by famed artist Salvador Dali.
Pursuant to a contract with Collectors'
Guild's assignor, Maecenas Press, Ltd.
("Maecenas"), plaintiff-appellee Werbungs
Und Commerz Union Austalt ("Werbungs")
claimed a right to one-half of these profits.
After Collectors' Guild refused to recognize
this claim, Werbungs commenced an action
against Collectors' Guild in the United
States District Court for the Southern Dis-
trict of New York seeking damages for,
among other things, Collectors' Guild's al-
leged breach of contract.

Following trial on Werbungs' breach of
contract claim, and a jury verdict finding
Collectors' Guild liable for breach, the dis-
trict court (Charles H. Tenney, *Judge*) en-
tered a judgment awarding damages to
Werbungs in the amount of $717,915. Col-
lectors' Guild appeals from this judgment.
On appeal, Collectors' Guild contends,
among other things, that the district court
erred by: (1) submitting the issue of con-
tract interpretation to the jury; (2) improp-
erly instructing the jury on contract inter-
pretation; and (3) improperly sanctioning
Collectors' Guild through certain evidentia-
ry rulings and jury instructions.

For the reasons set forth below, we af-
firm the judgment of the district court on
the issue of liability but reverse and re-
mand for a new trial on the issue of dam-
ages.

## BACKGROUND

On May 15, 1968, Werbungs, a Liechten-
stein corporation engaged in the business
of buying and selling art works and repro-
ductions, commissioned artist Salvador Dali
to create twelve original watercolor illus-
trations based on Lewis Carroll's *Alice's
Adventures in Wonderland.* Dali was
paid $5,000 and agreed that Werbungs
"shall have the sole and exclusive right
throughout the world to make, print, pub-
lish, sell and distribute copies or reproduc-

tions of any one or more of the Water Colors." On January 29, 1969, Werbungs negotiated and signed in New York two separate written contracts with Maecenas to produce and market two editions of *Alice's Adventures in Wonderland* (collectively, the "January 29 contracts"). Both editions were to incorporate the twelve Dali illustrations. The first January 29 contract ("first contract") stated that "[Werbungs] and Maecenas shall be the copyright owners of each edition" and that "[t]he rights and income of any future publication of the illustrations or the etching shall be shared equally by [Werbungs] and Maecenas." The first contract further provided that "[f]or a period of 3 years following publication of the aforesaid editions, no reproduction of any of the illustrations shall be made without the consent of [Werbungs] and Maecenas." The second January 29 contract ("second contract"), which was executed later the same day and which incorporated the first contract by reference, stated that "[Werbungs] sells, conveys and assigns to Maecenas Press Ltd., its successors and assigns all of [Werbungs'] right, title and interest in said two editions and all earnings therefrom for $60,000." Maecenas subsequently arranged for the publication and distribution of the two Dali-illustrated editions.

In 1975, Maecenas assigned its rights under the January 29 contracts to Collectors' Guild, a manufacturer and marketer of art reproductions. Nine years later, Collectors' Guild commissioned a new series of lithographic reproductions of the Dali illustrations. These lithographs were sold through promotions by American Express, Diners Club and Collectors' Guild itself. Although the actual profits earned are disputed, it was established that thousands of the lithographs were sold. Werbungs apparently was unaware of Collectors' Guild's venture and neither approved of nor participated in it. Upon learning of the venture, however, Werbungs brought the underlying action complaining, among other things, that Collectors' Guild had breached the January 29 contracts. Werbungs specifically claimed that under the terms of the first contract, it was entitled to fifty percent of any profits earned by Collectors' Guild from the sale of the lithographs.

Collectors' Guild moved for summary judgment, and Werbungs filed a cross-motion for summary judgment. *See* Fed.R. Civ.P. 56. Each claimed that the January 29 contracts were unambiguous and warranted entry of judgment on its behalf. Both parties agreed that under the first contract, Werbungs was entitled to fifty percent of the profits obtained as a result of any subsequent publication of the Dali illustrations. Thus, the crucial issue was the meaning of the clause in the second contract that provided that "[Werbungs] hereby sells, conveys and assigns to [Maecenas] ... all of [Werbungs'] right, title and interest in said two editions and all earnings therefrom." According to Werbungs, the language merely provided for the sale of its commercial interest in the two book editions *as such* and did not affect its interest in receiving profits from the future publication of the twelve Dali illustrations. In contrast, Collectors' Guild claimed that Werbungs' assignment of its rights in the two editions included the right to reproduce the Dali illustrations contained in the editions. Thus, according to Collectors' Guild, Werbungs implicitly relinquished any claim to profits from the future publication of the illustrations. In July 1988, Judge Pierre N. Leval, the district judge to whom the case was first assigned, reviewed the January 29 contracts, concluded that the terms at issue were ambiguous and, therefore, denied the motion and cross-motion. *Werbungs Und Commerz Union Austalt v. Collectors' Guild, Ltd.*, 84 Civ. 7393, slip op. at 4 (S.D.N.Y. July 12, 1988).

During discovery, Werbungs sought to discover various documents relating to revenues derived from the sale of the Dali lithographs. In June 1986, Werbungs served Collectors' Guild with a document request pursuant to Fed.R.Civ.P. 34. Over one year later, Collectors' Guild had not complied with the request. By letter dated June 15, 1987, Werbungs sought a court order, pursuant to Fed.R.Civ.P. 37, compelling Collectors' Guild to comply with Wer-

bungs' discovery request. In response, Collectors' Guild submitted a letter to the district court contending that discovery should not proceed until the court ruled on the parties' outstanding motions. The district court returned Collectors' Guild's letter with the signed endorsement "Discovery should go forward." By letter dated August 24, 1987, Collectors' Guild asked for reconsideration. On September 15, 1987, Judge Leval returned Collectors' Guild's letter with the signed endorsement "The application for reconsideration is denied. Defendants are directed to proceed with discovery and comply without delay with the production demands." Collectors' Guild subsequently served Werbungs with a written response to Werbungs' Rule 34 request. In response to requests for documents pertaining to sales revenue and inventory, Collectors' Guild claimed that such information was confidential and that its disclosure might be competitively harmful. Werbungs made no further effort to obtain this information.

Subsequently, during the deposition of Max Munn, Collectors' Guild's former president, Werbungs' counsel again inquired about the existence of business records that reflected the sales and inventory of the lithographic reproductions. In response, Munn stated that an accurate accounting of sales could not be produced because Collectors' Guild only maintained its sales records for a six-month period. However, Munn conceded that the relevant records might be "reconstructed" from other sources. At the close of the deposition, Werbungs' counsel expressed his intention to serve interrogatories on Munn. The interrogatories, however, were never served.

The case was thereafter assigned to District Judge Tenney, who presided at the jury trial. During the course of the trial, the parties elicited contradictory testimony regarding the meaning of the second contract. Jean Schneider, Werbungs' president, claimed that Werbungs had agreed to sell only its commercial interest in the two editions, not its interest in receiving a share in the income from the future exploitation of the illustrations. J. Robert LeShufy, an officer and director of Maecenas,

asserted that Maecenas had contracted to purchase all rights in the two editions—including Werbungs' right to receive income from the future reproduction of the Dali illustrations.

Another source of contention at trial was the actual revenues produced from the sales of the Dali lithographs. Collectors' Guild's records showed that the American Express and Diners Club promotions had yielded a gross income of approximately $2,413,954. Once the cost of the lithographs ($190 each), framing ($187.28 each) and other expenses were deducted, Collectors' Guild asserted a net loss of $65,000. With respect to its own catalogue promotions, however, Collectors' Guild was unable to substantiate its sales or revenues. Werbungs countered that Collectors' Guild had inflated its cost figures and underestimated the number of lithographs sold. Although unable to produce any tangible evidence regarding sales and revenues, Werbungs claimed that Collectors' Guild sold at least 14,000 lithographs, at a profit of between $200 to $400 per lithograph. Based on these estimates, Werbungs concluded that Collectors' Guild reaped a net income of between $2.8 and $5.6 million.

During the trial, the district court precluded the introduction of certain sales and inventory data that were offered into evidence by Collectors' Guild as a sanction for what the court deemed Collectors' Guild's abuse of the discovery process. The court believed that the precluded evidence was responsive to Werbungs' discovery request and should have been produced prior to, not during, the trial. As explained in its post-trial opinion, the district court "allowed some offers of inventory evidence and denied others, guided by its perception of how much prejudice [Werbungs] had suffered from the late disclosure." *Werbungs Und Commerz Union Austalt v. Collectors' Guild, Ltd.*, 728 F.Supp. 975, 982–83 (S.D.N.Y.1989).

At the close of the evidence, the district court's instructions to the jury encompassed, among other things, contract interpretation and the assessment of damages. On the subject of contract interpretation,

the court first instructed the jury that the two letter agreements executed on January 29 created a valid and enforceable contract between the parties. The jury's task, therefore, was to determine "whether, by using the words two editions, the parties intended to include not only [Werbungs'] rights in the books themselves but any separate rights embodied in the illustrations as well." The court referred to and discussed certain provisions of the January 29 contracts. The court then instructed the jury that although intent was seldom susceptible of direct proof, because it related to a person's state of mind, intent could be found "wholly or partly by written or spoken words or by other acts or conduct." The court also instructed the jury that it could consider the parties' "subsequent conduct" if it revealed the parties' intent at the time they entered into the contracts. *Id.*

On the subject of damage assessment, the district court instructed the jury, in pertinent part, as follows:

> If you find that [Collectors' Guild] engaged in any wrongful conduct, such as destroying data after it had been sought in a proper discovery request or unreasonably delaying the production of records sought in such a request, and if you find further that such wrongful conduct contributed to [Werbungs'] inability to establish its damages with certainty, then you may take into account the fact that [Werbungs] was denied the opportunity to investigate such evidence, and that it could not take its own discovery which might have allowed it to develop other evidence to challenge evidence introduced by [Collectors' Guild] during trial.

Collectors' Guild did not object specifically to these jury instructions. The jury found Collectors' Guild liable for breach of contract and awarded Werbungs damages in the amount of $1,140,000. This sum purportedly represented one-half of the income earned by Collectors' Guild on the sale of the Dali reproductions.

Subsequently, Collectors' Guild moved for judgment notwithstanding the verdict or, alternatively, for a new trial. On December 19, 1989 the district court denied the motion for judgment n.o.v. However, the court set aside the damage award and granted Collectors' Guild a new trial only on the issue of damages unless Werbungs accepted a remittitur to pare the damage award to $717,915. In ordering the remittitur, the court observed that "[a]lthough the preclusion rulings were proper ... the penalty [Collectors' Guild] paid for its misconduct is too high for the court, in good conscience, to allow to stand." *Werbungs*, 728 F.Supp. at 979–80. Werbungs agreed to the remittitur and, on December 29, 1989, judgment was entered in the amount of $717,915, exclusive of interest. This appeal followed.

The appeal was argued on May 9, 1990. On June 12, 1990, Collectors' Guild filed a voluntary petition for relief pursuant to Chapter 11 of the Bankruptcy Code. Accordingly, this appeal was stayed. *See* 11 U.S.C. § 362(a)(1) (1988). On December 7, 1990, the stay was lifted, allowing the appeal to proceed.

## DISCUSSION

### A. *Submission of Contract Interpretation to the Jury*

Collectors' Guild contends that the district court erred by finding the contract to be ambiguous and, consequently, by submitting the question of contract interpretation to the jury. According to Collectors' Guild, the language of the second contract, namely that Werbungs transferred to Collectors' Guild's assignor all of Werbungs' "right, title and interest in said two editions and all earnings therefrom" unambiguously establishes that Werbungs transferred all its right and interest in the illustrations as well.

As a preliminary matter, we note that the parties assume, and we agree, that New York law governs this case. Under New York law, a contract must be interpreted to give effect to the intent of the parties. *See, e.g., Curry Rd. Ltd. v. K-Mart Corp.*, 893 F.2d 509, 511 (2d Cir. 1990). Where contract language is ambig-

uous, interpretation of the language's meaning, and hence, determination of the parties' intent, is a question for the jury. *Proteus Books Ltd. v. Cherry Lane Music Co.*, 873 F.2d 502, 509 (2d Cir.1989); *Citizens Cent. Bank v. Fisher*, 126 A.D.2d 968, 969, 511 N.Y.S.2d 743 (4th Dep't 1987). Contract language is ambiguous if reasonable minds could differ as to its meaning. *Van Wagner Advertising Corp. v. S & M Enterprises*, 67 N.Y.2d 186, 191, 492 N.E.2d 756, 758–59, 501 N.Y.S.2d 628, 631 (1986); *Chimart Associates v. Paul*, 66 N.Y.2d 570, 573, 489 N.E.2d 231, 233, 498 N.Y.S.2d 344, 346 (1986). The determination of whether contract language is ambiguous is a question of law. *See, e.g., Proteus Books*, 873 F.2d at 509; *Van Wagner Advertising*, 67 N.Y.2d at 191, 492 N.E.2d at 758, 501 N.Y.S.2d at 631. Consequently, our review is *de novo*. *Network Pub. Corp. v. Shapiro*, 895 F.2d 97, 99 (2d Cir.1990).

■ Collectors' Guild argues that the phrase in the second contract assigning to Maecenas "all [of Werbungs'] right, title and interest in said two editions" includes Werbungs' right to share in the income from the future publication of the illustrations. Arguably, this assignment is broad and reasonably might be read as Collectors' Guild urges. However, the first contract plainly distinguishes between the "illustrations" and the "editions." The second contract, which incorporates the first contract by reference, refers only to the "editions". *See, e.g., A.F.L. Falck, S.p.A. v. E.A. Karay Co.*, 639 F.Supp. 314, 320 (S.D.N.Y. 1986) (where one contract incorporates another contract by reference, it is appropriate to examine both contracts to determine the parties' intent). Thus, it is equally plausible to conclude that had the parties intended the assignment in the second contract to include Werbungs' rights to income from the use of the illustrations, they knew how to do so expressly. Accordingly, because the contract is susceptible to more than one reasonable interpretation, the district court properly submitted the issue of contract interpretation to the jury. *See, e.g., Proteus Books*, 873 F.2d at 509; *Fisher*, 126 A.D.2d at 969, 511 N.Y.S.2d at 743.

**B.** *Jury Instructions on Contract Interpretation*

Collectors' Guild next contends that even if the district court correctly submitted the issue of contract interpretation to the jury, the court's jury instructions provided the jury with less than adequate guidance to interpret the contract.

■ In a diversity case, "[t]he procedures governing jury instructions are governed by federal law." *Proteus Books*, 873 F.2d at 514. Pursuant to Fed.R.Civ.P. 51, "[n]o party may assign as error the giving or failure to give an instruction unless the party objects thereto … stating distinctly the matter objected to and the grounds of the objection." Because Collectors' Guild failed to object to the district court's jury instructions at trial, we review Collectors' Guild's claim of error on appeal under the plain error standard. *See, e.g., Proteus Books*, 873 F.2d at 514; *Cohen v. Franchard Corp.*, 478 F.2d 115, 124 (2d Cir.), *cert. denied*, 414 U.S. 857, 94 S.Ct. 161, 38 L.Ed.2d 106 (1973). An appellate court will reverse a jury charge on grounds of plain error only when reversal is "necessary to correct a fundamental error or to prevent a miscarriage of justice." *Cohen*, 478 F.2d at 124.

■ As Collectors' Guild indicates, in instructing the jury, the district court referred to and discussed certain provisions of the January 29 contracts. However, the court did not, as Collectors' Guild contends, "instruct[ ] the jury to interpret intent from the four corners of the agreement." Rather, to ascertain the parties' intent and to resolve the contractual ambiguity, the court explained to the jury that the jury could consider the parties' "written or spoken words," "other acts or conduct" or their "subsequent conduct." While the court could have elaborated on the precise types of extrinsic evidence the jury was to consider, we do not believe that its failure to do so deprived the jury of adequate legal guidance to reach a rational decision, thereby compelling us to invoke the plain error doctrine. *See Frederic P. Wiedersum As-*

sociates v. National Homes Constr. Corp., 540 F.2d 62, 66 (2d Cir.1976). Accordingly, the challenged instruction does not rise to the level of plain error.

### C. Improper Discovery Sanction

■ During the trial, the district court precluded certain sales and inventory evidence offered by Collectors' Guild that was relevant to establishing the amount of income earned by Collectors' Guild on the sale of the reproductions. This income figure was necessary to calculate Werbungs' damages because, under the first contract, Werbungs was entitled to one-half of the income earned on the sale of the lithographs. As discussed above, the court believed that the precluded evidence was responsive to Werbungs' discovery request and should have been produced during discovery, not during trial. In addition to excluding this evidence, the court instructed the jury that in evaluating the evidence on damages it could consider whether Collectors' Guild engaged in "any wrongful [discovery] conduct" that "contributed to Werbungs' inability to establish its damages with certainty." On appeal, Collectors' Guild contends that both the preclusionary rulings and the jury instruction constituted an improper discovery sanction. See Fed.R.Civ.P. 37(b). We first address the propriety of the court's jury instruction.

As with the jury instruction on contract interpretation, Collectors' Guild failed to object to the damages instruction at trial. Accordingly, we can review Collectors' Guild's claim of error, and reverse on this ground, only if the court's instruction constitutes plain error. Proteus Books, 873 F.2d at 514; Cohen, 478 F.2d at 124.

Pursuant to Fed.R.Civ.P. 37(b), a federal district court can sanction a party for failing "to obey an order to provide or permit discovery." See Fed.R.Civ.P. 37(b); see also Bobal v. Rensselaer Polytechnic Inst., 916 F.2d 759, 764 (2d Cir.1990), cert. denied, — U.S. —, 111 S.Ct. 1404, 113 L.Ed.2d 459 (1991); Thomas E. Hoar, Inc. v. Sara Lee Corp., 900 F.2d 522, 525 (2d Cir.), cert. denied sub nom. Greenspan,

Jaffe & Rosenblatt v. Sara Lee Corp., — U.S. —, 111 S.Ct. 132, 112 L.Ed.2d 100 (1990). A district court's imposition of sanctions under Rule 37 is reviewed under an abuse of discretion standard. Thomas E. Hoar, 900 F.2d at 525.

■ In the instant case, the district court exercised its discretion under Rule 37 to sanction Collectors' Guild by precluding the introduction of certain sales and inventory evidence. Assuming, without deciding, that this sanction was proper, the district court abused its discretion and committed plain error when through its instruction it allowed the jury, in effect, to sanction Collectors' Guild again for its late production of documents. By broadly instructing the jury that it could find that Collectors' Guild had "engaged in any wrongful conduct" during discovery and that it could consider such conduct in evaluating the evidence on damages, the court essentially permitted the jury to penalize Collectors' Guild for discovery abuse and to disregard even the sales and inventory evidence that was properly admitted. As the district court explained in its post-trial opinion, "the court's concern was that, absent such an instruction, the jury might find even the limited amount of [Collectors' Guild's] financial data that had been admitted more persuasive than [Werbung's] circumstantial theory...." Werbungs, 728 F.Supp. at 983. We believe that the district court went too far in attempting to assure that Collectors' Guild did not benefit from its late production of documents. The court's instruction, which Werbungs apparently did not request, contributed to what was clearly a punitive damage award. Accordingly, we hold that the district court's jury instruction constituted reversible error.

■ Despite the punitive nature of the damages, the district court concluded that granting a remittitur would cure the jury's excessive award. Remittitur is appropriate to reduce verdicts only in cases "in which a properly instructed jury hearing properly admitted evidence nevertheless makes an excessive award." Shu–Tao Lin v. McDonnell Douglas Corp., 742 F.2d 45, 50 (2d Cir.1984). It is not designed to compen-

sate for excessive verdicts in cases where, as here, "error has infected the jury's entire consideration" of the evidence on damages. *See id.* Accordingly, the district court's use of remittitur did not cure the court's defective jury instruction.

As a result of our disposition of the jury instruction issue, we need not reach Collectors' Guild's remaining claim of error concerning the court's preclusion rulings. However, to ensure a more orderly retrial on damages, the district court may, in its discretion, permit the parties to conduct further discovery for a reasonable period of time. In addition, the parties are directed to indicate before trial the evidence they plan to introduce and to notify the district court before trial of all reasonably anticipated evidentiary objections.

## CONCLUSION

Based on the foregoing, we affirm the judgment on the issue of liability but reverse and remand for a new trial on the issue of damages. We have considered Collectors' Guild's remaining contentions on appeal and find them to be without merit.

MAHONEY, Circuit Judge, concurring in part and dissenting in part:

I agree with my colleagues that the liability issues were correctly decided by the district court. I also agree that the instruction regarding discovery abuse by Collectors' Guild improperly delegated to the jury the authority to participate, in effect, in the imposition of discovery sanctions that are the proper province of the district court. *See* Fed.R.Civ.P. 37(b). Further, although I deem it a very close issue on this record, I can concur in the ruling that this instruction constituted "plain error." [1]

Finally, in view of *Shu–Tao Lin v. McDonnell Douglas Corp.*, 742 F.2d 45, 50 (2d Cir.1984), I agree that the instructional error could not be cured by remittitur.

I disagree, however, with the majority's determination not to reach the issue whether the district court's preclusionary rulings were proper. The district court addressed the issue, *inter alia*, as follows:

> It is quite apparent that, through his incomplete answers, Munn [the president of Collectors' Guild] intended to mislead counsel for plaintiff into believing that the information he sought no longer existed, a fact that was flatly contradicted by defendant's attempt to introduce computer printouts containing inventory data at the end of the trial.
>
> \* \* \* \* \* \*
>
> Plaintiff represented to the court that, prior to trial, he never received a single document in respect to his discovery requests and defendant did not dispute this representation.
>
> \* \* \* \* \* \*
>
> Defendant's abuse of discovery, failure to list the documents in the pretrial order and its production of responsive documents on the eve of trial—and, even more disturbingly, in the middle of trial—would have fully justified the court's wholesale exclusion of all the inventory evidence.

*Werbungs und Commerz Union Austalt v. Collectors Guild, Ltd.*, 728 F.Supp. 975, 981–82 (S.D.N.Y.1989).

To say the least, I see no clear error or abuse of discretion in any of the foregoing, and therefore think that we should affirm the preclusionary rulings of the district court, rather than invite a further appeal on that issue. *See United States v. Borello*, 766 F.2d 46, 60 n. 23 (2d Cir.1985).

---

**1.** As we said in *Modave v. Long Island Jewish Medical Center*, 501 F.2d 1065 (2d Cir.1974) (Friendly, J.):

> [I]t is worth noting that the "plain error" phrase is found in F.R.Cr.P. 52, not in the civil rules. Except perhaps for errors that could not have been corrected on proper objection, the doctrine applicable in civil cases is the more limited one of "fundamental error," see *New York Central R.R. v. Johnson*, 279 U.S.

310, 318–319, 49 S.Ct. 300, 303–304, 73 L.Ed. 706 (1929)—an error so serious and flagrant that it goes to the very integrity of the trial. *Id.* at 1072. Rule 52(b) "plain error" trumps the provision in Fed.R.Crim.P. 30 that requires timely and specific objection in order to preserve a claim of error in a jury instruction, and "fundamental error" in the civil context trumps the substantially identical requirements of Fed.R.Civ.P. 51.

In addition, it seems to me that the terms of the remand excessively limit the district court's discretion, at least by implication. The majority states that:

> to ensure a more orderly retrial on damages, the district court may, in its discretion, permit the parties to conduct further discovery for a reasonable period of time. In addition, the parties are directed to indicate before trial the evidence they plan to introduce and to notify the district court before trial of all reasonably anticipated evidentiary objections.

The likely inference from this direction is that, absent settlement, there is to be a further trial as to damages in this already protracted litigation. In addition, given the majority's refusal to address the district court's preclusionary rulings, the safest course on remand would be to allow admission of previously precluded evidence. I regard all of this as an unwarranted intrusion upon the discretion afforded the district court by Fed.R.Civ.P. 37(b)(2). Accordingly, I would reverse for instructional error, specify that we find no error in the district court's preclusionary rulings, and remand without any directions or intimations that would further limit the discretion of the district court in addressing the issues of damages and discovery sanctions.