such orders are reversed to the extent such orders held that rents collected by the appellants constituted appellee's cash collateral prior to the date of appellee's November 18, 1991 motion for an order requiring appellants to turn over rents.[1]

SO ORDERED.

---

**BOSTON HARBOR INDUSTRIAL DEVELOPMENT CORP. et al., Appellants,**

v.

**CONNECTICUT GENERAL LIFE INSURANCE COMPANY,**
**Appellee.**

**No. 92 Civ. 1986 (VLB).**

United States District Court,
S.D. New York.

May 29, 1992.

Vincent J. Coyle, Jr., Rogers and Wells, New York City, for appellants.

Lorraine M. Weil, Hebb and Gitlin, Hartford, Conn., for appellee.

### ORDER

VINCENT L. BRODERICK, District Judge.

For the reasons stated and as more fully outlined on the record on May 26, 1992, the Bankruptcy Court's Order Determining Postpetition Rents to be Cash Collateral of Connecticut General Life Insurance Company dated February 14, 1992 and the Bankruptcy Court's Order Conditioning Debtors' Use of Rents and Providing Adequate Protection of Connecticut General Life Insurance Company's Interest in Rents dated February 14, 1992 are affirmed except that

---

**WERBUNGS UND COMMERZ UNION AUSTALT, Plaintiff,**

v.

**COLLECTORS' GUILD, LTD., Defendant,**

**PERMAL CAPITAL PARTNERS, L.P., Appellant,**

v.

**COLLECTORS' GUILD INTERNATIONAL, INC.; Collectors' Guild, Ltd.; and A.P.F., Inc., Appellees.**

**Nos. 84 Civ. 7393 (CHT), 92 Civ. 1913 (CHT).**

United States District Court,
S.D. New York.

Oct. 9, 1992.

---

Cinque & Cinque, P.C. (Robert Cinque, of counsel), New York City, for plaintiff-appellee.

Marc Stuart Goldberg & Associates, P.C., Trustee-in-Bankruptcy for defendants. (Marc Stuart Goldberg, of counsel), Mait, Wang & Simmons, (William R. Mait, of counsel), New York City, for defendant-appellants.

Stroock & Stroock & Lavan (Alvin K. Hellerstein, Edward P. Grosz, of counsel), New York City, for intervenor-defendant-appellant Permal Capital Partners, L.P.

## OPINION

TENNEY, District Judge

This case is before the court regarding two matters. One is a motion by the plaintiff to compel the payment of a supersedeas bond in satisfaction of a settlement agreement between itself and the defendant-in-bankruptcy. The other is an appeal by the intervenor-defendant from the finding of the bankruptcy court that the settlement agreement between the plaintiff and the defendant-in-bankruptcy was not collusive and from the bankruptcy court's further finding that the bond is not part of the bankrupt's estate. For the reasons set forth below, the bankruptcy court's findings of fact and law are affirmed in relevant part, the motion to compel payment of the bond is denied, and a trial on damages is ordered.

## BACKGROUND

The underlying dispute in this case arises from copyright interests and reproduction rights in thirteen water-color illustrations

by Salvador Dali inspired by the book *Alice in Wonderland* and commissioned by the plaintiff, Werbungs Und Commerz Union Austalt ("Werbungs").[1] In 1984, defendant Collectors' Guild, Ltd. ("Collectors' Guild"), the assignee of agreements with Werbungs regarding production of two editions of books containing a limited number of the lithographs, commissioned a new series of lithographic productions of the Dali illustrations. The new lithographs were sold primarily through American Express, Diners Club, and Collectors' Guild without the consent of Werbungs.

Upon discovery of these sales, Werbungs brought suit, alleging that Collectors' Guild had breached the underlying agreements that Werbungs had signed in 1969 with Maecenas Press, Ltd., Collectors' Guild's predecessor in interest. Specifically, Werbungs claimed that under the terms of one of the contracts, it was entitled to fifty percent of the profits earned from sale of the lithographs by Collectors' Guild.

At trial before this court, the jury found Collectors' Guild liable for breach of contract and awarded Werbungs damages in the amount of $1,140,000. Defendant then moved for judgment notwithstanding the verdict, or alternatively, for a new trial. This court denied the motion for judgment n.o.v. but granted Collectors' Guild a new trial on the issue of damages unless Werbungs accepted a remittitur setting the damage award to $717,915. *See Werbungs Und Commerz Union v. Collectors Guild, Ltd.*, 728 F.Supp. 975 (S.D.N.Y.1989). Werbungs agreed to the remittitur and judgment was entered. Collectors' Guild sought an appeal.

As one of the conditions of the appeal, this court required that Collectors' Guild post a $300,000 supersedeas bond. The bond was issued by Fidelity & Deposit Company of Maryland ("Fidelity") and se-cured by a letter of credit from Marine Midland Bank, N.A., which was collateralized by a certificate of deposit from Permal Capital Partners, L.P. ("Permal"), a stockholder of Collectors' Guild.

During the pendency of the appeal, Collectors' Guild filed for Chapter 11 protection.[2] After lifting the stay of the bankruptcy court, the Second Circuit affirmed the judgment as to liability but vacated the damages award and remanded. *Werbungs Und Commerz Union Austalt v. Collectors' Guild, Ltd.*, 930 F.2d 1021 (2d Cir. 1990).

Werbungs and Collectors' Guild entered into negotiations after the appeal and reached a settlement (the "settlement agreement") whereby Werbungs would receive $300,000, to be paid only from the proceeds of the bond, in complete satisfaction of the judgment and then turn $10,000 of the settlement over to Collectors' Guild. The settlement agreement was approved by the bankruptcy court on August 24, 1991. Werbungs then made a formal demand on Fidelity for payment of the bond by a letter dated September 6, 1991. Fidelity refused to comply with the demand. Werbungs then moved in this court to order Fidelity to pay it the bond. Permal moved to intervene as a party-defendant.

This court granted Permal's motion to intervene, finding, in part, that Permal had an interest in the proceedings because it was more than a shareholder or creditor by virtue of its procurement of the letter of credit securing the bond. This court also concluded that the bond remained in effect because neither condition for voiding it had occurred.[3] Finally, this court remanded the matter of the payment of the bond to the bankruptcy court for findings of fact and conclusions of law "in light of Fidelity's and Permal's arguments." *Werbungs Und Commerz Union Austalt v. Collec-*

---

1. For a more detailed history of the agreements that led to the underlying action, see *Werbungs Und Commerz Union v. Collectors Guild, Ltd.*, 728 F.Supp. 975, 976 (S.D.N.Y.1989), *rev'd in part*, 930 F.2d 1021 (2d Cir.1991).

2. The case was later converted to a Chapter 7 proceeding. The estate is a no-asset estate.

3. The two conditions specified in the language of the bond itself are: (1) the appellant satisfies the judgment after the appeal is either dismissed or the judgment is affirmed; or (2) the appellant satisfies any modification of the judgment as the appellate court awards.

*tors' Guild, Ltd.,* 782 F.Supp. 870, 876 (S.D.N.Y.1991). Specifically, Fidelity and Permal argued that the bond should not be paid to Werbungs because Collectors' Guild had abandoned its appeal by entering a "collusive bargain" without notice to Fidelity. Fidelity also argued that the settlement was invalid because the $10,000 payment by Werbungs to Collectors' Guild would effectively make the surety's liability greater than that of the principal.

### Bankruptcy Court's Findings

The bankruptcy court held an evidentiary hearing on February 12, 1992, and concluded that the compromise of the claim was a core matter, that the settlement was a compromise of a claim, that the compromise was not collusive, and that the trustee had sufficient basis to compromise the claim. The bankruptcy court then expressly held that neither the supersedeas bond nor Permal's interest in the bond is property of the bankrupt estate. With regard to the trustee, the court found that he was making an agreement to compromise a claim that would be of a benefit to the no-asset estate, and had "a sound and reasoned basis for settling the claim."

The bankruptcy court also expressed the opinion that it did not believe that it had the jurisdiction to rule on the effect of the settlement of the bond. It did recommend to this court "that the supersedeas bond may to some extent be a property interest of the estate only to the extent that the debtor is a defendant here [presumably, in bankruptcy] and that accordingly the debt-

or may or may not have some rights in the bond," but felt that the district court had reserved the final decision on the matter for itself. (Minutes of bankruptcy court hearing of February 12, 1992, at 69–70). Permal now appeals those findings to this court.

### DISCUSSION

### I. The Bankruptcy Court's Findings

As Permal concedes, the appeal raises only questions of fact and therefore must be reviewed under a "clearly erroneous" standard. *In re Manville Forest Products Corp.,* 896 F.2d 1384 (2d Cir.1990); *In re Lomas Financial Corp.,* 117 B.R. 64 (S.D.N.Y.1990); *remanded on other grounds,* 932 F.2d 147 (2d Cir.1991), Bank. Proc.Rule 8013.

### A. The Bankruptcy Court's Finding That The Settlement Agreement Was Not Collusive

Permal argues that the bankruptcy court based its conclusion that the settlement agreement was not collusive "solely on the fact that the settlement agreement was in the best interests of the bankrupt." But Permal offers no proof of this assertion. Instead, it advances what is at bottom a legal argument that where an appellant receives any monetary consideration from an appellee for abandoning an appeal and thereby rendering a surety liable on a supersedeas bond, then that agreement is *per se* "collusive." [4] It further argues, that as a result, any such agreement releases the

---

**4.** In support of its position, Permal relies heavily on *Sutton v. Hay,* 9 F.2d 795 (7th Cir.1925). In that case, the Seventh Circuit disallowed a settlement agreement where the amount of a supersedeas bond was given to the appellee in return for an abandonment of the appeal and the amount spent on the appeal by the appellant. Using broad language, the court there indicated that while an appellee might strongly persuade an appellant of the futility of pursuing an appeal, the exchange of money in return for abandoning the appeal was prohibited. The underlying reasons for the disallowance were (1) that the surety should be "indulge[d] in the belief that the appeal will be heard upon its merits, and the hope that as a result of such hearing there is some chance that the principal, and therefore the surety, may be relieved of

liability on the bond," and (2) that while the principal may cause the appeal to be dismissed, leaving the surety liable, the principal, without the consent of the surety, "may not compound the appeal with his opponent and then look to the surety upon the bond for payment of his money judgment." *Id.* at 796.

In the present case, it may fairly be pointed out, the question of liability has been settled by the Second Circuit; only the issue of the amount of damages remains open. The first concern of the court in *Sutton* is arguably dispensed with here. However, the question of whether an appellee-principal may receive money from the appellant-obligee as part of a settlement on a supersedeas bond remains an open one.

surety of its obligations under the bond, rather than merely voiding the settlement agreement. Because of our disposition of the bankruptcy court's other holdings, the merits of these arguments need not be reached.

### B. The Bankruptcy Court's Finding That the Bond Was Not Part Of The Estate

■ Although there is understandable confusion about the exact findings of the bankruptcy court with regard to Collectors' Guild's interest in the bond, the court explicitly stated that "it's clear that the supersedeas bond in a legal sense is certainly not property of the estate. I don't believe that Permal's interest, the Letter of Credit[,] is property of the estate."[5] (Minutes of bankruptcy court hearing of February 12, 1992, at 69). On review, the appellant carries the burden to prove that the findings are clearly erroneous. *In re Eljay, Inc.*, 123 B.R. 961 (S.D.N.Y.1991). Here, however, the appellant, Permal, embraces the above findings of fact in order to challenge the trustee's authority to enter into the settlement agreement as being beyond his authority and the jurisdiction of the bankruptcy court. In response, Werbungs does not even refer to the above finding, but instead relies on 11 U.S.C. § 541(a)(1) which defines the property of a debtor's estate as "all legal or equitable interests of the debtor and property as of the commencement of the case." In its reliance, the appellee apparently looks to the comments of the bankruptcy court that "there may be some sort of equitable interest in the bond." See *supra* note 5.

For its position, Permal relies exclusively on *In re Forty–Eight Insulations, Inc.*, 133 B.R. 973 (Bankr.N.D.Ill.1991). In that case the court held that the bankruptcy court lacked authority to approve a settlement between insurers and the debtor, an additional insured under a policy purchased by its corporate parent, because the settlement would have the effect of precluding the corporate parent from asserting claims under the policies. However, the support of precedent sought by Permal is weak. Although the court in *Forty–Eight* found no authority under the bankruptcy code "to enter an injunction that impairs a non-debtor's contractual rights against another non-debtor," *id.* at 979, the case there is factually distinguishable from the one before this court. Here, Permal does not have an independent contractual right against Werbungs which is being extinguished by an agreement between Werbungs and Collectors' Guild. Rather, Permal's interests arise from owning the collateral securing the letter of credit. *Werbungs v. Collectors' Guild*, 782 F.Supp. at 875. This court accordingly is not persuaded that the reasoning of *Forty–Eight* is applicable here although the result is similar because of the finding of the bankruptcy court.

For its part, Werbungs relies upon *MacArthur v. Johns–Manville Corp.*, 837 F.2d 89 (2d Cir.1988), *cert. denied*, 488 U.S. 868, 109 S.Ct. 176, 102 L.Ed.2d 145 (1988). In *MacArthur*, the Second Circuit held that the rights that distributors might have in Manville's products liability policies as a result of vendor endorsement provisions contained within the policies were derivative of and inseparable from Manville's own rights and thus were properly within the bankruptcy court's jurisdiction. The court went on to hold that the bankruptcy court did not exceed its authority in approving a settlement of the debtor's claims against the products liability insurers which enjoined suits by the distributors against the insurers. Permal's rights, however, cannot be said to be derivative of and inseparable from the rights of Collec-

---

**5.** The confusion arises because later the court stated in reference to matters that it characterized as noncore that "my recommendation to the District Court and my findings would be that the supersedeas bond may to some extent be a property interest of the estate only to the extent that the Debtor is a Defendant here and that accordingly the Debtor may or may not have some rights in the bond." (Minutes of bankruptcy court hearing of February 12, 1992, at 69). The court later added, "At best, the bond [—] there may be some sort of equitable interest in the bond because it satisfies a claim and at least it has the potential to satisfy a claim." *Id.* at 70.

tors' Guild. Permal's rights exist independent of Collectors' Guild's rights.

■ Furthermore, this court remains unpersuaded that there is any reason to overturn the bankruptcy court's factual determination that the bond and the letter of credit are not part of the estate. We recognize that bankruptcy jurisdiction is "to be construed as broadly as possible within the constitutional constraints of *Marathon.*"[6] *In re Ben Cooper, Inc.,* 896 F.2d 1394 (2d Cir.1990), *vacated to address jurisdiction,* —— U.S. ——, 111 S.Ct. 425, 112 L.Ed.2d 408 (1991), *reinstated,* 924 F.2d 36 (2d Cir.1991), *cert. denied,* —— U.S. ——, 111 S.Ct. 2041, 114 L.Ed.2d 126 (1991). However, where the bankruptcy court has made a clear factual finding that the property involved is not property of the estate, speculative and ambiguous statements by the court of the possibility of an equitable interest by the bankrupt in the property, without more, is insufficient to bring the property back within the estate.[7] Because the bankruptcy court below reached its conclusion after a full hearing, and neither party has offered sufficient evidence as to why the court's findings are erroneous, the bankruptcy court is affirmed as to its finding that neither the bond nor the letter of credit is part of the estate.

## II. The Motion to Compel Payment

■ Having concluded that the bankruptcy court was not clearly erroneous in its determinations, this court can now rule on plaintiff's pending motion to compel payment of the supersedeas bond. *See Werbungs v. Collectors' Guild,* 782 F.Supp. at 876.

Because the bond is not part of the bankrupt estate, the trustee, regardless of intent, did not have the authority to enter into a settlement agreement. As a result, the bankruptcy court did not have the authority to enter a final order regarding the stipulation of settlement. Therefore, that order must be set aside. Accordingly, the motion by Werbungs to compel payment of the bond must fail as the underlying settlement agreement is void.

■ We are left then with a plaintiff who has a judgment against a defendant, but for no fixed amount of damages. The bond, as per previous rulings, remains in effect because the conditions of the bond— as determined by its specific language— have not been met. Although both of the initial parties seek to negotiate a settlement with the amount of the bond as the centerpiece of the deal, they cannot proceed without the consent of Permal. Resolution of this litigious quagmire appears possible only by first determining the amount of damages that exist. If the damages exceed the amount of the bond, then the plaintiff will be entitled to the full amount of the bond and a claim—futile though it may be—against Collectors' Guild's estate for the remainder. If the damages fall short of the amount of the bond, then the plaintiff will receive its share from the payment of the bond with the remainder presumably returning to Permal.[8]

In ordering a trial on damages, this court is doing little more than fulfilling the directive of the Court of Appeals which was entered almost two and an half years ago. *Werbungs v. Collectors' Guild,* 930 F.2d at 1026–28. Collectors' Guild has suggested that it does not have the funds to litigate any additional claims. However, that is no bar in the present case. Even if Collectors' Guild is unable to litigate, Permal has repeatedly expressed its willingness to relitigate the issue of damages. Furthermore,

---

**6.** The reference is to *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) (while Congress could grant the bankruptcy courts the right to issue final orders in core proceedings—primarily those concerning the restructuring of the debtor-creditor relationship—it could not give the right to issue such orders in "private right" claims merely because those claims involved a debtor).

**7.** Of course, had there been other assets owned by Collectors' Guild which could have been applied to the Settlement Agreement, then the bankruptcy court would have had jurisdiction.

**8.** Such a result presumes no agreement between Collectors's Guild and Permal to the contrary.

with the bond seeming to be the sole asset against which a judgment may be levied, Permal, as provider of collateral for the bond, would seem to have an even greater interest than Collectors' Guild in staging a thorough defense.

## CONCLUSION

Because the bankruptcy court was not clearly erroneous in concluding that the supersedeas bond was not part of Collectors' Guild's bankruptcy estate, that court did not have the authority in a previous proceeding to enter a final order of settlement between the bankrupt and Werbungs. The ramifications of this finding preempt the necessity of answering the question of whether the bankruptcy court was erroneous in finding that the settlement agreement was not collusive. We deny the pending motion by Werbungs to compel payment of the bond and order a trial on damages from the underlying dispute to take place as soon as possible.

So ordered.