■ ANNA H. SU, Respondent, v STEPHEN Y. H. SU, Appellant. [702 NYS2d 455] —Crew III, J. Appeals (1) from an order of the Supreme Court (Coutant, J.), entered December 1, 1998 in Broome County, which granted plaintiff's motion for summary judgment, and (2) from the judgment entered thereon.

In October 1993, plaintiff and defendant entered into a written separation agreement which survived the parties' March 1995 judgment of divorce and, insofar as is relevant to this appeal, provided that defendant would pay plaintiff maintenance in the amount of $2,000 per month "until such time as [plaintiff] begins to receive payments from [defendant's] pension from the State University of New York—Binghamton, at which time monthly support will be terminated". To that end, Supreme Court issued a qualified domestic relations order (hereinafter QDRO) in August 1995 transferring 50% of defendant's pension to plaintiff. Although plaintiff apparently is entitled to withdraw such funds from her account at any time, there is no indication in the record that she has done so.

Defendant continued to make the required maintenance payments until January 1996. Thereafter, in or about September 1997, plaintiff commenced this action seeking to enforce the monthly maintenance obligation set forth in the parties' separation agreement.* Defendant answered and counterclaimed for 14 months of what he deemed to be "unnecessary" maintenance payments, contending that his obligation in this regard ceased once plaintiff obtained access to her share of his pension. Plaintiff thereafter moved for summary judgment and Supreme Court granted the motion, finding that defendant's obligation to pay maintenance under the separation agreement terminated upon his retirement or plaintiff's withdrawal of the pension funds awarded, whichever occurred first. This appeal by defendant ensued.

We affirm. The parties' dispute distills to whether the subject separation agreement provides for the termination of defendant's maintenance obligation once plaintiff becomes *eligible to receive* her share of defendant's pension or, rather, whether that obligation continues until such time as plaintiff *actually receives* the funds in question. As noted previously, the mainte-

---

\* There is some suggestion in the record that plaintiff commenced a previous action seeking the same relief, which purportedly was deemed abandoned.

nance provision at issue provides, in relevant part, that "[plaintiff] will be paid the sum of $2,000 per month for maintenance * * * until such time as she begins to receive payments from [defendant's] pension from the State University of New York—Binghamton, at which time monthly support will be terminated".

Where, as here, the separation agreement at issue survives the judgment of divorce, the agreement remains a valid and enforceable contract subject to the basic principles of contract interpretation (*see, Matter of Meccico v Meccico*, 76 NY2d 822, 823-824). In this regard, it is well settled that whether a writing is ambiguous is a question of law for the court to resolve in the first instance (*see, W.W.W. Assocs. v Giancontieri*, 77 NY2d 157, 162) and, further, that the writing must be read as a whole to determine its purpose and intent (*see, Falter Constr. Corp. v City of Binghamton*, 257 AD2d 865, 867).

Applying these principles to the matter before us, we conclude, contrary to Supreme Court, that the separation agreement is not ambiguous with respect to defendant's maintenance obligation. The previously quoted portion of the separation agreement does not, as defendant contends, tie his maintenance obligation to plaintiff's eligibility to receive her share of his pension; rather, the agreement specifies that such payments will continue "until such time as she begins to receive payments from [defendant's] pension". Any uncertainty as to the meaning of the phrase "begins to receive payments" is, in our view, resolved by reference to paragraph 10 (B) of the separation agreement, which provides, in pertinent part, as follows: "[Defendant] agrees to select the 50% [j]oint [s]urvivor option or its equivalent and to execute forthwith all documents and do all things necessary in order to effectuate such option being implemented with respect to his pension funds * * *. [Plaintiff] will obtain a [QDRO] at the time of the filing of a [d]ivorce between the parties in the form necessary to direct the relevant entities * * * to pay [plaintiff] her equitable share of [defendant's] pensions *upon his retirement*" (emphasis supplied). Thus, reading the agreement as a whole, it is apparent that the parties contemplated the issuance of a QDRO from the outset and, had they wished to tie defendant's maintenance obligation to the issuance of the QDRO and plaintiff's resulting eligibility to receive the funds in question, they plainly could have done so.

Moreover, even accepting defendant's assertion that the separation agreement contains an ambiguity in this regard, we find that the extrinsic evidence submitted by plaintiff and

properly considered by Supreme Court was sufficient to warrant awarding summary judgment in favor of plaintiff. Accordingly, Supreme Court's order and judgment are affirmed.

Cardona, P. J., Peters, Spain and Graffeo, JJ., concur. Ordered that the order and judgment are affirmed, without costs.