■ In the Matter of the Estate of SHARON M. SHATRAW, Deceased. MICHELLE L. WOODALL, as Administrator of the Estate of SHARON M. SHATRAW, Deceased, Respondent; TERRY W. SHATRAW, Appellant. [887 NYS2d 722]—

Kavanagh, J. Appeal from an order of the Surrogate's Court of St. Lawrence County (Rogers, S.), entered December 23, 2008, which granted petitioner's application to compel respondent to deliver certain real and personal property to decedent's estate.

After 23 years of marriage, respondent (hereinafter the husband) and decedent (hereinafter the wife) entered into a written separation agreement in which the husband, in return for the wife waiving any interest in his heating and plumbing business, agreed to give her his entire interest in two parcels of real property, as well as his entire net pension with a minimum of $2,091.24 to be deposited by the husband each month into the wife's checking account. The real estate included the marital residence and a rental property, both of which are located in the Village of Massena, St. Lawrence County. The agreement also provided that any costs incurred in the maintenance of these properties, including all carrying charges, would be paid from the funds that the wife received each month from the husband's pension. The wife died before a judgment of divorce was entered or any written instrument was filed transferring to her the husband's interest in the real property. Thereafter, petitioner—the wife's daughter and administrator of her estate—filed this petition to compel the

husband to convey to the wife's estate both parcels of real property and the monthly net income he received from his pension (*see* SCPA 2103). After a hearing, Surrogate's Court granted the petition and directed the husband to convey the property and pay his pension benefits into the wife's estate. The husband now appeals.

First turning to the pension, the husband argues that the pension payments made to the wife were designed to provide her with a form of maintenance and, as such, any obligation to make these payments terminated upon her death. The wife's estate argues, and Surrogate's Court agreed, that because the separation agreement stated that the pension payments were made "[i]n lieu of maintenance," it created a contractual obligation that passed to the wife's estate upon her death. "[T]he ultimate goal in contract interpretation is realization and effectuation of the parties' intent. Such intent is to be gleaned not only from the literal language of the agreement, but also from whatever reasonably may be implied therefrom" (*Matter of Frye v Brown*, 189 AD2d 1031, 1033 [1993] [citations omitted]; *see Greenberg v Greenberg*, 37 AD3d 410, 411 [2007], *lv denied* 8 NY3d 816 [2007]; *Clark v Clark*, 33 AD3d 836, 837-838 [2006]). While the separation agreement characterized the husband's pension payments as being made "[i]n lieu of maintenance," it specifically provided that if "the pension benefit is not provided to the wife, then she reserves the right to seek alimony/maintenance," and that "if the husband has a slow month financially, he may deduct $500.00 to pay the current truck payment from the pension upon providing to the wife the reason necessary."[1] As such, the amount the husband was required to pay the wife under this provision of the agreement was dependent upon his existing financial situation, which is a consideration that traditionally has relevance only in determining the amount and extent of a spouse's maintenance obligation (*see* Domestic Relations Law § 236 [B] [6]). These clauses, when read together, support the conclusion that the purpose of the pension payments was to provide the wife with a form of maintenance for her ongoing support (*see Matter of Frye v Brown*, 189 AD2d at 1033 [where the requirement to make mortgage payments *in lieu of maintenance* was found to be "an alternative form of maintenance designed to financially benefit (the wife)]").

We also note that the agreement, drafted by the wife's attorney, not only preserved the wife's right to pursue mainte-

---

**1.** The husband also agreed to continue providing health insurance to the wife.

nance, but also failed to expressly provide that the husband's obligation to make these payments would survive her death. In addition, as structured, the agreement contemplated, to a degree, the wife's personal participation in implementing its provisions, including the designation of a checking account where these funds would be deposited "in [her] name exclusively."[2] This language supports the conclusion that these payments constituted a form of ongoing maintenance designed to provide the wife with support during her lifetime and were not intended by the parties to continue after her demise (*see* Domestic Relations Law § 236 [B] [1] [a]; [6] [c]; *Lorenz v Lorenz*, 63 AD3d 1361, 1362 [2009]).

We agree with Surrogate's Court, however, that the obligation to transfer the real estate was a contractual right created when the parties executed the separation agreement and passed to the wife's estate upon her death. The agreement stated that "the wife shall be granted the sole title, possession and occupancy of [the property], and the husband shall execute a Quit Claim Deed, conveying any other interest in [these properties] to the wife." It gave to the wife upon its execution an immediate proprietary right to these marital assets that was not in any way conditioned upon her survival (*see* EPTL 11-3.1; *Brower v Brower*, 226 AD2d 92, 94-95 [1997]).

Spain, J.P., Rose, Lahtinen and Malone Jr., JJ., concur. Ordered that the order is modified, on the law, without costs, by reversing so much thereof as ordered respondent to pay to decedent's estate a sum equal to his net pension, and, as so modified, affirmed.

**2.** The husband was not represented by an attorney when he signed this agreement.