■ ELIZABETH ANN COLONEY, Appellant, v WILLIAM G. COLONEY, JR., Respondent. [914 NYS2d 376]—

Egan Jr., J. Appeal from a judgment of the Supreme Court (Sise, J.), entered May 7, 2010 in Fulton County, which divided the proceeds from the sale of the marital home.

Plaintiff and defendant were married in June 1972. In 1989, the parties entered into a written separation agreement which, as relevant here, provided that defendant was to have sole possession of the former marital residence. More specifically, it provided that during his occupancy, defendant was to assume the obligation to pay the mortgage, taxes, insurance, utilities and expenses for repairs, and that, upon a sale of the house, the parties were to split the net proceeds after satisfying the mortgage, a $14,900 loan from defendant's father, the broker's commission and closing costs. While he lived in the house, defendant made the regular monthly mortgage payments and, eventually, the mortgage was satisfied. At some point, defendant also repaid the loan from his father. In 1995, a judgment of divorce was entered granting the parties a divorce, incorporating, but not merging, the 1989 separation agreement.

In 2009, some 20 years after execution of the separation agreement, the house was sold for $164,320. After the parties unsuccessfully attempted to reach an understanding with respect to the division of the net sale proceeds, defendant sought an order authorizing the distribution of the sale proceeds so as to grant him a credit for the entire amount of the mortgage satisfied by him during his occupancy and the $14,900 paid to satisfy his father's loan. Supreme Court determined that defendant was entitled to credits of $37,550 (representing the 1989 balance on the mortgage) and $14,900 (representing the amount paid to his father), and plaintiff now appeals.

" 'A separation agreement that is incorporated into but not merged with a divorce decree is an independent contract binding on the parties unless impeached or challenged for some cause recognized by law' " (*Bjerke v Bjerke*, 69 AD3d 1042, 1043-1044 [2010], quoting *Merl v Merl*, 67 NY2d 359, 362 [1986]; *see Matter of Heinlein v Kuzemka*, 49 AD3d 996, 997 [2008]; *Mills v Mills*, 22 AD3d 1003, 1003 [2005]; *Matter of Antes v Miller*, 304 AD2d 892, 893 [2003]). As such, the intent of the parties is determined by contract law and, " 'thus, any ambiguity in the agreement's terms must be resolved by determining the parties' intent at the time of contracting, either from within the four corners of the document, if possible, or, as a last resort, from whatever extrinsic evidence is avail-

able' " (*Bjerke v Bjerke*, 69 AD3d at 1044, quoting *Cortese v Redmond*, 199 AD2d 785, 786 [1993]; *see Teachers Ins. & Annuity Assn. v Tedeschi*, 3 AD3d 671, 673 [2004]; *Su v Su*, 268 AD2d 945, 946 [2000], *lv denied* 95 NY2d 752 [2000]). Whether or not any ambiguity exists is a question of law for the court to decide (*see W.W.W. Assoc. v Giancontieri*, 77 NY2d 157, 162 [1990]; *Van Wagner Adv. Corp. v S & M Enters.*, 67 NY2d 186, 191 [1986]; *Shook v Blue Stores Corp.*, 30 AD3d 811, 812 [2006]; *Hudock v Village of Endicott*, 28 AD3d 923, 924 [2006]; *Su v Su*, 268 AD2d at 946). Furthermore, "[a] contract is ambiguous if the language used lacks a definite and precise meaning, and there is a reasonable basis for a difference of opinion" (*Pozament Corp. v AES Westover, LLC*, 27 AD3d 1000, 1001 [2006]; *see Greenfield v Philles Records*, 98 NY2d 562, 569 [2002]). If ambiguity is found, " 'intent is to be gleaned not only from the literal language of the agreement, but also from whatever reasonably may be implied therefrom' " (*Matter of Shatraw*, 66 AD3d 1293, 1294 [2009], quoting *Matter of Frye v Brown*, 189 AD2d 1031, 1033 [1993]; *see Mills v Mills*, 22 AD3d at 1003; *Stewart v Stewart*, 266 AD2d 702, 704 [1999]; *Hewlett v Hewlett*, 243 AD2d 964, 966 [1997], *lvs dismissed* 91 NY2d 887 [1998], 95 NY2d 778 [2000]).

Here, the separation agreement contemplated the eventual sale of the house by one of two means—by one party buying out the other party's interest or by sale to a third party. In the event of a third-party sale, the agreement provided that plaintiff and defendant would share equally in the net proceeds, after deduction of the amount to be paid to satisfy the mortgage, the $14,900 loan from defendant's father, brokerage commissions and closing costs. In the event of one party buying out the other's interest, the agreement provided that the purchase price would be calculated at one half of the then net equity, taking into consideration the balance of the existing mortgage as of November 1989.

While the spousal buyout provision does indeed reference the November 1989 balance of the existing mortgage, it is in the context of the parties' negotiated formula for establishing a purchase price if a sale were to occur between themselves—an event that never occurred. Defendant's and Supreme Court's reliance on that language is thus misplaced, and we must look to the agreement's language as it pertains to a third-party sale to determine the parties' intent.

The agreement is clear that the parties will share equally in the proceeds of the sale after the balance on the existing mortgage—whatever that amount may be—is deducted. While

the 1989 agreement does not specifically contemplate the possibility of the house selling at a date so far in the future that the mortgage would be paid in full, it is obvious that the parties intended that, in return for defendant being permitted to reside in the house, he would be required to pay the taxes, insurance, mortgage, utilities and repairs in the meantime, that no backward-looking credit was to be given defendant for previous mortgage payments, and that the parties would share equally in the cost of paying off, at closing, any *existing* mortgage balance, plus the father's loan (*see generally Matter of Wasyliw v Smith*, 18 AD3d 931, 933 [2005]). The fact that no mortgage existed to be paid off by the time of closing is simply a reflection that defendant enjoyed the right under the agreement to indefinite possession of the house and so availed himself for some 20 years.

Thus, based on the express language of the separation agreement, which obligates defendant to make the mortgage payments on the marital home, and the lack of any language which, in the event of a subsequent sale of the marital residence to a third-party would provide defendant with a credit for those mortgage payments, Supreme Court erred in providing defendant with such a credit (*see Matter of Shatraw*, 66 AD3d at 1295; *Hejna v Reilly*, 26 AD3d 709, 712 [2006]; *Braune v Braune*, 132 AD2d 512 [1987]; *compare Ives v Ives*, 96 AD2d 643 [1983], *appeal dismissed* 61 NY2d 760 [1984]). Likewise, in light of the clear language of the separation agreement providing that the loan from defendant's father "shall be paid from the proceeds of the sale," we find that Supreme Court erred in determining that defendant was entitled to recoup the entire amount of the debt from the proceeds of the sale. As the agreement contemplated that each party's ultimate share of the proceeds from the sale of the marital home would be reduced by one half of the debt amount, defendant is entitled to a credit in the amount of $7,450 only.

Mercure, J.P., Malone Jr., Stein and McCarthy, JJ., concur. Ordered that the judgement is modified, on the law, without costs, by reversing so much thereof as granted defendant a credit of $52,450 from the proceeds of the sale of the marital residence; grant defendant a credit of $7,450 from said proceeds; and, as so modified, affirmed.