OPINION OF THE COURT
 

 Kaye, J.
 

 Specific performance of a contract to lease "unique” billboard space is properly denied when damages are an adequate remedy to compensate the tenant and equitable relief would impose a disproportionate burden on the defaulting landlord. However, owing to an error in the assessment of damages, the order of the Appellate Division should be modified so as to remit the matter to Supreme Court, New York County, for further proceedings with respect to damages.
 

 By agreement dated December 16, 1981, Barbara Michaels leased to plaintiff, Van Wagner Advertising, for an initial period of three years plus option periods totaling seven additional years space on the eastern exterior wall of a building on East 36th Street in Manhattan. Van Wagner was in the business of erecting and leasing billboards, and the parties anticipated that Van Wagner would erect a sign on the leased space, which faced an exit ramp of the Midtown Tunnel and was therefore visible to vehicles entering Manhattan from that tunnel.
 

 In early 1982 Van Wagner erected an illuminated sign and leased it to Asch Advertising, Inc. for a three-year period commencing March 1, 1982. However, by agreement dated January 22, 1982, Michaels sold the building to defendant S & M Enterprises. Michaels informed Van Wagner of the sale in early August 1982, and on August 19, 1982 S&M sent Van Wagner a letter purporting to cancel the lease as of October 18 pursuant to section 1.05, which provided:
 

 "Notwithstanding anything contained in the foregoing provisions to the contrary, Lessor (or its successor) may terminate
 
 *190
 
 and cancel this lease on not less than 60 days prior written notice in the event and only in the event of:
 

 "a) a bona fide sale of the building to a third party unrelated to Lessor”.
 

 Van Wagner abandoned the space under protest and in November 1982 commenced this action for declarations that the purported cancellation was ineffective and the lease still in existence, and for specific performance and damages.
 

 In the litigation the parties differed sharply on the meaning of section 1.05 of the lease. Van Wagner contended that the lease granted a right to cancel only to the owner as it was about to sell the building — not to the new purchaser — so that the building could be conveyed without the encumbrance of the lease. S & M, in contrast, contended that the provision clearly gave it, as Michaels’ successor by virtue of a bona fide sale, the right to cancel the lease on 60 days’ notice. Special Term denied Van Wagner’s motion for a preliminary injunction, concluding that the lease by its terms gave S & M the authority to cancel and that Van Wagner was therefore not likely to succeed on the merits.
 
 [1]
 

 At a nonjury trial, both parties introduced paroi evidence, in the form of testimony about negotiations, to explain the meaning of section 1.05. Additionally, one of S & M’s two partners testified without contradiction that, having already acquired other real estate on the block, S & M purchased the subject building in 1982 for the ultimate purpose of demolishing existing buildings and constructing a mixed residential-commercial development. The project is to begin upon expiration of a lease of the subject building in 1987, if not sooner.
 

 Trial Term concluded that Van Wagner’s position on the issue of contract interpretation was correct, either because the lease provision unambiguously so provided or, if the provision were ambiguous, because the paroi evidence showed that the "parties to the lease intended that only an owner making a bona fide sale could terminate the lease. They did not intend that once a sale had been made that any future purchaser could terminate the lease at will.” Trial Term declared the lease "valid and subsisting” and found that the "demised space is unique as to location for the particular advertising purpose intended by Van Wagner and Michaels, the original
 
 *191
 
 parties to the Lease.” However, the court declined to order specific performance in light of its finding that Van Wagner "has an adequate remedy at law for damages”. Moreover, the court noted that specific performance "would be inequitable in that its effect would be disproportionate in its harm to the defendant and its assistance to plaintiff.” Concluding that "[t]he value of the unique qualities of the demised space has been fixed by the contract Van Wagner has with its advertising client, Asch for the period of the contract”, the court awarded Van Wagner the lost revenues on the Asch sublease for the period through trial, without prejudice to a new action by Van Wagner for subsequent damages if S & M did not permit Van Wagner to reoccupy the space. On Van Wagner’s motion to resettle the judgment to provide for specific performance, the court adhered to its judgment.
 

 On cross appeals the Appellate Division affirmed, without opinion. We granted both parties leave to appeal.
 

 Whether or not a contract provision is ambiguous is a question of law to be resolved by a court
 
 (Sutton v East Riv. Sav. Bank,
 
 55 NY2d 550, 554). In our view, section 1.05 is ambiguous. Reasonable minds could differ as to whether the lease granted a purchaser of the property a right to cancel the lease, or limited that right to successive sellers of the property
 
 (see, Chimart Assoc, v Paul,
 
 66 NY2d 570, 573). However, Trial Term’s alternate finding — that the paroi evidence supported Van Wagner’s interpretation of the provision — was one of fact. That finding, having been affirmed by the Appellate Division and having support in the record, is beyond the scope of our review
 
 (see, Huntley v State of New York,
 
 62 NY2d 134, 137). Thus, S & M’s cancellation of Van Wagner’s lease constituted a breach of contract.
 

 Given defendant’s unexcused failure to perform its contract, we next turn to a consideration of remedy for the breach: Van Wagner seeks specific performance of the contract, S&M urges that money damages are adequate but that the amount of the award was improper.
 
 [2]
 

 Whether or not to award specific performance is a decision
 
 *192
 
 that rests in the sound discretion of the trial court, and here that discretion was not abused. Considering first the nature of the transaction, specific performance has been imposed as the remedy for breach of contracts for the sale of real property
 
 (Judnick Realty Corp. v 32 W. 32nd St. Corp.,
 
 61 NY2d 819, 823;
 
 Da Silva v Musso,
 
 53 NY2d 543, 545;
 
 S.E.S. Importers v Pappalardo,
 
 53 NY2d 455), but the contract here is to lease rather than sell an interest in real property. While specific performance is available, in appropriate circumstances, for breach of a commercial or residential lease, specific performance of real property leases is not in this State awarded as a matter of course
 
 (see, Gardens Nursery School v Columbia Univ.,
 
 94 Misc 2d 376, 378).
 
 [3]
 

 Van Wagner argues that specific performance must be granted in light of the trial court’s finding that the "demised space is unique as to location for the particular advertising purpose intended”. The word "uniqueness” is not, however, a magic door to specific performance. A distinction must be drawn between physical difference and economic interchangeability. The trial court found that the leased property is physically unique, but so is every parcel of real property and so are many consumer goods. Putting aside contracts for the sale of real property, where specific performance has traditionally been the remedy for breach, uniqueness in the sense of physical difference does not itself dictate the propriety of equitable relief.
 

 By the same token, at some level all property may be interchangeable with money. Economic theory is concerned with the degree to which consumers are willing to substitute the use of one good for another
 
 (see,
 
 Kronman,
 
 Specific Performance,
 
 45 U Chi L Rev 351, 359), the underlying assumption
 
 *193
 
 being that "every good has substitutes, even if only very poor ones”, and that "all goods are ultimately commensurable”
 
 (id.).
 
 Such a view, however, could strip all meaning from uniqueness, for if all goods are ultimately exchangeable for a price, then all goods may be valued. Even a rare manuscript has an economic substitute in that there is a price for which any purchaser would likely agree to give up a right to buy it, but a court would in all probability order specific performance of such a contract on the ground that the subject matter of the contract is unique.
 

 The point at which breach of a contract will be redressable by specific performance thus must lie not in any inherent physical uniqueness of the property but instead in the uncertainty of valuing it: "What matters, in measuring money damages, is the volume, refinement, and reliability of the available information about substitutes for the subject matter of the breached contract. When the relevant information is thin and unreliable, there is a substantial risk that an award of money damages will either exceed or fall short of the promisee’s actual loss. Of course this risk can always be reduced — but only at great cost when reliable information is difficult to obtain. Conversely, when there is a great deal of consumer behavior generating abundant and highly dependable information about substitutes, the risk of error in measuring the promisee’s loss may be reduced at much smaller cost. In asserting that the subject matter of a particular contract is unique and has no established market value, a court is really saying that it cannot obtain, at reasonable cost, enough information about substitutes to permit it to calculate an award of money damages without imposing an unacceptably high risk of undercompensation on the injured promisee. Conceived in this way, the uniqueness test seems economically sound.” (45 U Chi L Rev, at 362.) This principle is reflected in the case law
 
 (see, e.g., Erie R. R. Co. v City of Buffalo,
 
 180 NY 192, 200;
 
 St. Regis Paper Co. v Santa Clara Lbr. Co.,
 
 173 NY 149, 160;
 
 Dailey v City of New York,
 
 170 App Div 267, 276-277,
 
 affd
 
 218 NY 665), and is essentially the position of the Restatement (Second) of Contracts, which lists "the difficulty of proving damages with reasonable certainty” as the first factor affecting adequacy of damages (Restatement [Second] of Contracts § 360 [a]).
 

 Thus, the fact that the subject of the contract may be "unique as to location for the particular advertising purpose
 
 *194
 
 intended” by the parties does not entitle a plaintiff to the remedy of specific performance.
 

 Here, the trial court correctly concluded that the value of the "unique qualities” of the demised space could be fixed with reasonable certainty and without imposing an unacceptably high risk of undercompensating the injured tenant. Both parties complain: Van Wagner asserts that while lost revenues on the Asch contract may be adequate compensation, that contract expired February 28, 1985, its lease with S & M continues until 1992, and the value of the demised space cannot reasonably be fixed for the balance of the term. S & M urges that future rents and continuing damages are necessarily conjectural, both during and after the Asch contract, and that Van Wagner’s damages must be limited to 60 days — the period during which Van Wagner could cancel Asch’s contract without consequence in the event Van Wagner lost the demised space. S & M points out that Van Wagner’s lease could remain in effect for the full 10-year term, or it could legitimately be extinguished immediately, either in conjunction with a bona fide sale of the property by S & M, or by a reletting of the building if the new tenant required use of the billboard space for its own purposes. Both parties’ contentions were properly rejected.
 

 First, it is hardly novel in the law for damages to be projected into the future. Particularly where the value of commercial billboard space can be readily determined by comparisons with similar uses — Van Wagner itself has more than 400 leases — the value of this property between 1985 and 1992 cannot be regarded as speculative. Second, S & M having successfully resisted specific performance on the ground that there is an adequate remedy at law, cannot at the same time be heard to contend that damages beyond 60 days must be denied because they are conjectural. If damages for breach of this lease are indeed conjectural, and cannot be calculated with reasonable certainty, then S & M should be compelled to perform its contractual obligation by restoring Van Wagner to the premises. Moreover, the contingencies to which S & M points do not, as a practical matter, render the calculation of damages speculative. While S & M could terminate the Van Wagner lease in the event of a sale of the building, this building has been sold only once in 40 years; S & M paid several million dollars, and purchased the building in connection with its plan for major development of the block. The theoretical termination right of a future tenant of the existing
 
 *195
 
 building also must be viewed in light of these circumstances. If any uncertainty is generated by the two contingencies, then the benefit of that doubt must go to Van Wagner and not the contract violator. Neither contingency allegedly affecting Van Wagner’s continued contractual right to the space for the balance of the lease term is within its own control; on the contrary, both are in the interest of S & M
 
 (see,
 
 by analogy,
 
 Amerman v Deane,
 
 132 NY 355). Thus, neither the need to project into the future nor the contingencies allegedly affecting the length of Van Wagner’s term render inadequate the remedy of damages for S & M’s breach of its lease with Van Wagner.
 

 The trial court, additionally, correctly concluded that specific performance should be denied on the ground that such relief "would be inequitable in that its effect would be disproportionate in its harm to defendant and its assistance to plaintiff”
 
 (see, Matter of Burke v Bowen,
 
 40 NY2d 264, 267;
 
 Cox v City of New York,
 
 265 NY 411; Restatement [Second] of Contracts § 364 [1] [b]). It is well settled that the imposition of an equitable remedy must not itself work an inequity, and that specific performance should not be an undue hardship
 
 (see,
 
 Pomeroy and Mann, Specific Performance of Contracts § 185 [3d ed 1926]). This conclusion is "not within the absolute discretion of the Supreme Court”
 
 (McClure v Leaycraft,
 
 183 NY 36, 42;
 
 see, Trustees of Columbia Col. v Thacker,
 
 87 NY 311;
 
 cf. Forstmann v Joray Holding Co.,
 
 244 NY 22). Here, however, there was no abuse of discretion; the finding that specific performance would disproportionately harm S&M and benefit Van Wagner has been affirmed by the Appellate Division and has support in the proof regarding S & M’s projected development of the property.
 

 While specific performance was properly denied, the court erred in its assessment of damages. Our attention is drawn to two alleged errors.
 

 First,
 
 both parties are dissatisfied with the award of lost profits on the Asch contract: Van Wagner contends that the award was too low because it failed to take into account incidental damages such as sign construction, and S&M asserts that it was too high because it failed to take into account offsets against alleged lost profits such as painting costs. Both arguments are precluded. Although the trial was not bifurcated or limited to the issue of liability, the Asch contract was placed in evidence and neither party chose to
 
 *196
 
 submit additional proof of incidental damages or other expenses for that period. Nor — as is evident from the judgment — did the trial court understand that any separate presentations would be made as to damages for that period. Based on the Asch contract indicating revenues, and the lease indicating expenses, the trial court properly calculated Van Wagner’s lost profits. Having found that the value of the space was fixed by the Asch contract for the entire period of that contract, however, the court erred in awarding the lost revenues only through November 23, 1983. Damages should have been awarded for the duration of the Asch contract.
 

 Second, the court fashioned relief for S & M’s breach of contract only to the time of trial, and expressly contemplated that "[i]f defendant continues to exclude plaintiff from the leased space action for continuing damages may be brought.” In requiring Van Wagner to bring a multiplicity of suits to recover its damages the court erred. Damages should have been awarded through the expiration of Van Wagner’s lease.
 

 Accordingly, the order of the Appellate Division should be modified, with costs to plaintiff, and the case remitted to Supreme Court, New York County, for further proceedings in accordance with this opinion and, as so modified, affirmed.
 

 Chief Judge Wachtler and Judges Meyer, Simons, Titone and Hancock, Jr., concur; Judge Alexander taking no part.
 

 Order modified, etc.
 

 [1]
 

 . Contrary to the assertion of S & M, denial of a motion for a preliminary injunction does not "constitute the law of the case or an adjudication on the merits”
 
 (Walker Mem. Baptist Church v Saunders,
 
 285 NY 462, 474).
 

 [2]
 

 . We note that the parties’ contentions regarding the remedy of specific performance in general, mirror a scholarly debate that has persisted throughout our judicial history, reflecting fundamentally divergent views about the quality of a bargained-for promise. While the usual remedy in Anglo-American law has been damages, rather than compensation "in kind”
 
 (see,
 
 Holmes,
 
 The Path of the Law,
 
 10 Harv L Rev 457, 462 [1897]; Holmes, The Common Law, at 299-301 [1881]; and Gilmore, The Death of Contract,
 
 *192
 
 at 14-15), the current trend among commentators appears to favor the remedy of specific performance
 
 (see,
 
 Farnsworth,
 
 Legal Remedies for Breach of Contract,
 
 70 Colum L Rev 1145, 1156 [1970]; Linzer,
 
 On the Amorality of Contract Remedies
 
 — Efficiency,
 
 Equity, and the Second Restatement,
 
 81 Colum L Rev 111 [1981]; and Schwartz,
 
 The Case for Specific Performance,
 
 89 Yale LJ 271 [1979]), but the view is not unanimous
 
 (see,
 
 Posner, Economic Analysis of Law § 4.9, at 89-90 [2d ed 1977]; Yorio,
 
 In Defense of Money Damages for Breach of Contract,
 
 82 Colum L Rev 1365 [1982]).
 

 [3]
 

 .
 
 But see,
 
 5A Corbin, Contracts § 1143, at 131; at 7, n 62 [1971 Pocket Part]; 11 Williston, Contracts § 1418A [3d ed]; Pomeroy and Mann, Specific Performance of Contracts § 9, at 18-19 [3d ed 1926]; Restatement [Second] of Contracts § 360 comment a, illustration 2; Restatement [Second] of Contracts § 360 comment e;
 
 cf. City Stores Co. v Ammerman,
 
 266 F Supp 766,
 
 affd
 
 Per Curiam 394 F2d 950.