■ REPUBLIC NATIONAL BANK OF NEW YORK, Appellant, v ZIMMCOR U.S.A. CORP., Defendants, and LEHRER/McGOVERN, INC., et al., Respondents. (And Third- and Fourth-Party Ac-

tions.) [609 NYS2d 907] —Judgment, Supreme Court, New York County (William J. Davis, J.), entered May 28, 1993, which granted defendants Lehrer/McGovern, Inc. and L/M Fifth, Inc.'s (the "L/M defendants") motion for a declaratory judgment and awarded defendants $73,189 in attorneys' fees, plus interest and costs, as against plaintiff Republic National Bank of New York ("Republic") pursuant to a certain stipulation agreement, unanimously reversed, on the law, and the matter is remanded for trial on the issues of liability and, if necessary, damages, without costs.

In 1981, plaintiff Republic was in the process of constructing a new twenty-nine story world corporate headquarters in New York City. L/M Fifth, Inc. was the construction manager of the project and its parent, Lehrer/McGovern, Inc., guaranteed its performance. Republic had also entered into a contract with defendant and third-party plaintiff Zimmcor U.S.A. Corp. ("Zimmcor") pursuant to which Zimmcor was to erect a glass "curtain wall" on the exterior of the building. Zimmcor was obligated under its contract to protect the glass during construction and to remove and replace any damaged panels.

During the construction of the curtain wall, "weld splatter" and hot molten slag struck numerous unprotected panel surfaces which threatened their integrity and required their removal. Zimmcor, however, refused to replace the glass unless Republic reimbursed it for the additional work, which Republic did, with the parties preserving their respective legal rights.

Republic thereafter commenced the underlying action against Zimmcor and the L/M defendants on or about June 25, 1987 in an effort to recover the costs it incurred in repairing the curtain wall. Third- and fourth-party actions were subsequently commenced against various subcontractors, all of whom interposed cross-claims against each other for indemnity and contribution.

Republic and the L/M defendants thereafter entered into a written settlement agreement (the "Agreement") dated September 30, 1988 pursuant to which Republic agreed to settle its claims against the L/M defendants for the sum of $100,000. Paragraphs 6 and 7 of the Agreement, which are at issue herein, provide:

"6. L/M Fifth and Lehrer/McGovern, at their expense, shall cause their attorneys expeditiously to prepare and file a motion to dismiss all claims made by them against other parties to the action and to dismiss all contribution, indemnifi-

cation, and other claims made against them in the Action and to prosecute all available appeals from any adverse determination of such motion. Republic shall support the motion and appeals, but shall not bear L/M Fifth's and Lehrer/McGovern's expense in respect thereto.

"7. Except as set forth in Paragraph 6 of this Agreement, the continued defense of L/M Fifth, Lehrer/McGovern, and Lehrer McGovern Bovis shall be at the expense of Republic, which shall have the right to designate counsel to represent L/M Fifth and Lehrer/McGovern. Republic *(a)* indemnifies and holds harmless each and all of the Releasees from and against any and all costs, expenses, and attorneys' fees (including, without limitation, expert witness fees) incurred by Releasees in the continued defense of the Action and *(b)* shall promptly pay such costs, expenses, and fees upon presentation of invoices therefor. Republic may at its election satisfy its obligation pursuant to the preceding sentence by engaging and paying attorneys and expert witnesses, and paying the costs, expenses, and fees for said continued defense, directly."

Pursuant to the foregoing provisions, the L/M defendants moved to dismiss all of the cross-claims interposed against them. Republic supported the L/M defendants' motion and cross-moved to voluntarily discontinue its own negligence cause of action against Zimmcor on the grounds that its claims relate solely to its cause of action for breach of contract. By order dated August 14, 1989, Justice Davis granted the L/M defendants' motion to dismiss the cross-claims asserted against them and also dismissed Republic's negligence claim against Zimmcor.

Zimmcor did not appeal the foregoing order but approximately one year later, on August 9, 1990, Zimmcor moved for leave to renew the dismissal and discontinuance motions, which was opposed by both the L/M defendants and Republic. By decision and order dated January 11, 1991, Justice Davis granted Zimmcor's motion to renew and adhered to his original decision. The L/M defendants, who were represented by Reid & Priest, made a request to Republic for their legal fees based on Paragraphs 6 and 7 of the Agreement, which request was denied.

Zimmcor subsequently appealed Justice Davis' decision and this Court modified [181 AD2d 533] that order to the extent of reinstating Zimmcor's cross-claim against the L/M defendants seeking partial indemnity. Again, the L/M defendants requested reimbursement for their legal fees pursuant to the Agreement, which request was again rejected by Republic.

During the course of the appeal, Zimmcor's Canadian parent entered into bankruptcy in the courts of Canada and as a result, by order dated February 26, 1992, Justice Davis stayed all proceedings against Zimmcor. Notwithstanding the foregoing, the L/M defendants sought leave from this Court to appeal to the Court of Appeals and Republic moved for reargument or for leave to appeal to the Court of Appeals.

In response to those motions, Zimmcor moved for contempt against Reid & Priest, as well as against Republic's attorneys, for allegedly violating the stay. On or about June 16, 1992, we denied the motion for reargument and for leave to appeal to the Court of Appeals without reference to the contempt motion, which was then withdrawn by Zimmcor. At this juncture, Republic's counsel took over as counsel for the L/M defendants as set forth in Paragraph 7 of the Agreement, with all future legal fees to be borne by Republic.

By order to show cause dated December 11, 1992, the L/M defendants moved for an order directing Republic to reimburse them in the sum of $73,189, which allegedly represented the L/M defendants' attorneys' fees incurred as the result of the motion to renew, the appeal, the motion for leave to appeal to the Court of Appeals and the contempt motion. Justice Davis, in applying a literal interpretation to Paragraph 6 of the Agreement, concluded that because the appeal and concomitant motion practice did not arise out of an "adverse determination of [the dismissal] motion" but, rather, had its genesis in a later motion for renewal, Paragraph 6 of the Agreement did not apply and therefore Republic was responsible for the L/M defendants' attorneys' fees pursuant to Paragraph 7. This was error and we now reverse.

It is a question of law for the courts to determine whether or not a contract is ambiguous (see, *W.W.W. Assocs. v Giancontieri,* 77 NY2d 157; *Van Wagner Adv. Corp. v S & M Enters.,* 67 NY2d 186, 191). An unambiguous agreement is one which is not reasonably susceptible to more than one interpretation (see, *Chimart Assocs. v Paul,* 66 NY2d 570; *Shames v Abel,* 141 AD2d 531, 534).

As noted by the Court of Appeals in *Hooper Assocs. v AGS Computers* (74 NY2d 487, 491-492): "The promise [to indemnify] should not be found unless it can be clearly implied from the language and purpose of the entire agreement and the surrounding facts and circumstances * * *. Inasmuch as a promise by one party to a contract to indemnify the other for attorney's fees incurred in litigation between them is contrary

to the well-understood rule that parties are responsible for their own attorney's fees, the court should not infer a party's intention to waive the benefit of the rule unless the intention to do so is unmistakably clear from the language of the promise." *(See also, Cassidy v County of Nassau,* 182 AD2d 608.)

In the case at bar, the language of Paragraph 6, and the surrounding language and circumstances, are anything but crystal clear. It appears that the IAS Court's ruling is based primarily on a literal reading of that portion of Paragraph 6 which provides for the L/M defendants to prosecute at their own expense all appeals from "any adverse determination". Thus, the IAS Court held that since the initial decision was not an adverse determination, Republic was liable for legal expenses incurred by the L/M defendants subsequent to such determination.

However, a reading of Paragraphs 6 and 7 can also support plaintiff's contention that Republic's obligation to pay legal expenses commences only when a final determination has been made on defendants' motion after defendants have exhausted all possible appeals. The expansive language of Paragraph 6 which provides that the L/M defendants shall move to dismiss "all" claims for contribution and indemnification and "other" claims, and to prosecute "all" appeals from "any" adverse determination supports Republic's position.

It is arguable that Zimmcor's motion to renew was part of defendants' original motion to dismiss the cross-claims since the Zimmcor motion was in response to the court's determination of defendants' motion. The subsequent appeals and motion practice were the result of the Appellate Division's ruling which reinstated Zimmcor's cross-claim based on Zimmcor's motion to renew. It is also arguable that the L/M defendants were obligated to appeal at their own expense from the ruling of the Appellate Division since Paragraph 6 provides that defendants shall appeal from "any" adverse determination of their motion to dismiss. The reinstatement of Zimmcor's cross-claim would appear to be such an adverse determination.

In *Atwater & Co. v Panama R. R. Co.* (246 NY 519, 524), the Court of Appeals held that: "Particular words should be considered, not as if isolated from the context, but in the light of the obligation as a whole and the intention of the parties as manifested thereby. Form should not prevail over substance and a sensible meaning of words should be sought."

In conclusion, we note that Justice Learned Hand once

opined in a concurring opinion in *Guiseppi v Walling* (144 F2d 608, 624, *affd sub nom. Gemsco, Inc. v Walling,* 324 US 244) that "[t]here is no surer way to misread any document than to read it literally".

In view of the foregoing, summary judgment to the L/M defendants was inappropriate and the matter is remanded to the IAS Court for trial to determine the intent of the parties. Should the trier of fact determine that the L/M defendants are entitled to attorneys' fees, then the IAS Court should hold a hearing as to the reasonableness of those fees *(see, Coniglio v Regan,* 186 AD2d 708; *Kumble v Windsor Plaza Co.,* 128 AD2d 425, *lv dismissed* 70 NY2d 693). Concur—Murphy, P. J., Kupferman, Asch, Williams and Tom, JJ.