State of New York v Winkle (2020 NY Slip Op 00633)





State of New York v Winkle


2020 NY Slip Op 00633


Decided on January 29, 2020


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on January 29, 2020
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

WILLIAM F. MASTRO, J.P.
SHERI S. ROMAN
FRANCESCA E. CONNOLLY
ANGELA G. IANNACCI, JJ.


2016-04395
 (Index No. 115/07)

[*1]State of New York, et al., respondents,
v
Ruth Winkle, et al., appellants, et al., defendant.


Profeta & Eisenstein, New York, NY (Fred R. Profeta, Jr., of counsel), for appellants Ruth Winkle and William Winkle.
Brian S. Nache, Garden City, NY, for appellant Alan Risi.
Letitia James, Attorney General, New York, NY (Anisha S. Dasgupta and Judith N. Vale of counsel), for respondents.



DECISION & ORDER
In a consolidated action, inter alia, for judicial enforcement of an administrative order on consent of the Commissioner of the New York State Department of Environmental Conservation dated January 10, 2005, and to recover civil penalties pursuant to Environmental Conservation Law §§ 71-1107, 71-1127, and 71-2503, the defendants Ruth Winkle and William Winkle appeal, and the defendant Alan Risi separately appeals, from a judgment of the Supreme Court, Queens County (Rudolph E. Greco, Jr., J.), entered February 26, 2016. The judgment, upon an order of the same court dated October 20, 2015, confirming a Referee's report dated April 8, 2015, made after a hearing, is in favor of the plaintiffs and against the defendants William Winkle and Alan Risi.
ORDERED that the appeal by the defendant Ruth Winkle is dismissed, as that defendant is not aggrieved by the judgment (see CPLR 5511); and it is further,
ORDERED that the judgment is modified, on the facts and in the exercise of discretion, by (1) reducing the amount of the civil penalty imposed upon the defendant William Winkle from the principal sum of $500,000 to the principal sum of $95,000, and (2) deleting the provision thereof directing William Winkle "to restore 154-45 Riverside Drive to its pre-violation condition by" undertaking certain actions; as so modified, the judgment is affirmed on the appeals by the defendants William Winkle and Alan Risi, and the matter is remitted to the Supreme Court, Queens County, for a new determination of the remediation actions necessary for William Winkle to perform consistent with current regulations; and it is further,
ORDERED that one bill of costs is awarded to the plaintiffs payable by the defendant Alan Risi.
The defendants are neighbors who live along a stretch of the East River waterfront that is regulated by the plaintiff New York State Department of Environmental Conservation (hereinafter the DEC). Sometime between 1996 and 1998, the defendant Alan Risi dumped fill and installed a revetment to reinforce and extend his back yard 60 feet farther than his DEC-issued permit allowed. The DEC commenced an administrative enforcement proceeding against Risi and [*2]his wife, alleging that the work disturbed regulated tidal wetlands and tidal wetland adjacent areas as well as regulated navigable waters. The DEC ultimately determined that the work violated the Tidal Wetlands Act (ECL 25-0101 et seq.) and the Water Resources Law (ECL 15-0101 et seq.), imposed a civil penalty, and ordered that Risi and his wife remediate their shoreline. Risi and his wife thereafter commenced a proceeding pursuant to CPLR article 78 in the Supreme Court, Queens County (hereinafter the Risi proceeding), challenging that administrative determination. The court dismissed the petition and awarded the DEC summary judgment on its counterclaim to enforce the administrative order.
This consolidated action addresses violations of the Tidal Wetlands Act and the Water Resources Law that Risi's work caused on his neighbors' parcels to his west and to his east. As to the parcel to the west of Risi's parcel, Risi admitted during the administrative enforcement proceeding against him that he also dumped fill and constructed a revetment along the curved shoreline located on real property owned at the time by the defendant Kathleen Sellars (hereinafter Sellars) without a DEC permit. The DEC, its Commissioner, and the State of New York (hereinafter the plaintiffs) commenced an action in the Supreme Court, Queens County, against Sellars (hereinafter the Sellars action), and after conducting some discovery, joined Risi as a defendant. The operative pleading in the Sellars action sought, among other things, to impose a civil penalty upon Risi and Sellars for violations of the Tidal Wetlands Act and Water Resources Law.
As to the parcel to the east of Risi's parcel, the DEC commenced an administrative proceeding against the defendants Ruth Winkle and William Winkle for violations of the Tidal Wetlands Act and Water Resources Law arising from the presence of unpermitted fill and a revetment along their shoreline. William Winkle, in his testimony at the hearing in this matter, denied personal involvement in the illegal construction, explaining that his elderly mother, Ruth Winkle, permitted Risi to perform the work after Risi falsely claimed that his permit allowed it. William Winkle entered into an administrative order on consent with the DEC dated January 10, 2005, in which he "allege[d] that he was not personally involved," but "accept[ed] responsibility for the placement of fill" and "construction of [the] revetment," among other things. William Winkle agreed to pay a $110,000 civil penalty, with $95,000 suspended on condition that he comply with the consent order. He also agreed to "restore" the property "by removing all fill and structures from the tidal wetland area" in conformance with an attached map. Critically, the consent order required William Winkle to submit a proposed engineering plan depicting the remediation within 60 days, which the DEC would then revise or approve at its discretion. The consent order further provided that, in the event the DEC were to conclude that William Winkle violated the consent order, the DEC reserved the right to "initiate action based upon the violation(s) . . . and also to seek penalties for such additional violation(s), including continued violations, that occur after the date" of the consent order. Instead of submitting the engineering plan described in the consent order, William Winkle sent a letter from an engineer opining that removal of the fill and revetment would endanger the dwelling and other structures on the property. The plaintiffs commenced an action against William Winkle and Ruth Winkle (hereinafter the Winkle action) by summons and complaint dated January 2, 2007, alleging that they violated the consent order and were therefore liable under the Tidal Wetlands Act and Water Resources Law for payment of the suspended portion of the administrative penalty and additional civil penalties for the continued presence of the illegal improvements on their property. The plaintiffs also sought equitable relief in the form of an order directing compliance with the consent order along substantially the same procedure described therein.
By notice of motion dated June 7, 2010, the plaintiffs moved to consolidate the Winkle action, the Sellars action, and the Risi proceeding for the purposes of conducting a hearing, and for summary judgment in the Winkle action and the Sellars action. In an order dated May 18, 2011, the Supreme Court granted that branch of the motion which sought consolidation, but denied those branches of the motion which were for summary judgment. By notice of motion dated February 1, 2013, the plaintiffs moved to consolidate the Winkle action, the Sellars action, and the Risi proceeding for all purposes, renewed their motion for summary judgment on the issue of William Winkle's liability, and moved for summary judgment on the issue of Risi's liability in the Sellars action. In an order dated July 1, 2013, the court denied consolidation with respect to the Risi proceeding and instead severed it, explaining that the Risi proceeding had by then come to a final judgment in the plaintiffs' favor. The court then consolidated the Winkle action and the Sellars [*3]action for all purposes and denied the plaintiffs' renewed motion for summary judgment on the issue of William Winkle's liability. The court, however, granted summary judgment on the issue of Risi's liability. Sellars thereafter settled with the plaintiffs, and the remaining parties stipulated to the severance of Ruth Winkle from the consolidated action.
The Supreme Court referred this matter to a Referee to hear and report pursuant to CPLR 4320 on the outstanding issues of fact. After that hearing, the Referee issued a report in which she found that William Winkle violated the consent order, in effect, recommended imposing a $500,000 civil penalty upon him in addition to the sum still due under the consent order, and, in effect, recommended imposing a $650,000 civil penalty upon Risi. The Referee also, in effect, recommended that William Winkle be directed to restore his property "back to its pre-violation condition forthwith." By order dated October 20, 2015, the court confirmed the Referee's report. The court subsequently issued a judgment entered February 26, 2016. William Winkle, Ruth Winkle, and Risi appeal.
Risi's contention that the Supreme Court lacked the authority to impose a civil penalty upon him in this consolidated action is without merit. "Any person" who violates the Tidal Wetlands Act "shall be liable . . . for a civil penalty" (ECL 71-2503[1][a]). The Water Resources Law likewise provides that "[a]ny person" who violates its provisions "shall be liable for a civil penalty" (ECL 71-1127[1]; see ECL 71-1107[1]). Here, during the administrative enforcement proceeding against Risi and his wife, Risi testified that he placed fill and constructed the revetment now present on the shoreline of the Sellars's property. These admissions, offered as exhibits to the plaintiffs' renewed motion for summary judgment in this consolidated action, served as the basis for the court's award of summary judgment to the plaintiffs on the issue of Risi's liability for the condition of the Sellars's parcel in its order dated July 1, 2013. The court therefore had the power to impose a civil penalty upon Risi for the violations present on the Sellars parcel (see ECL 71-1127[1]; 71-2503[1][a]).
In addition, and contrary to Risi's contention, we agree with the Supreme Court's decision to accept the Referee's report, hearing transcript, and hearing exhibits despite their late filing (see CPLR 2001; Martin v Castaneda, 73 AD3d 712, 712-713; Capili v Ilagan, 26 AD3d 354, 354; see also CPLR 4320).
" In reviewing a determination made after a [hearing], this Court's power is as broad as that of the [hearing] court, and it may render the judgment it finds warranted by the facts, taking into account that in a close case the [hearing] court had the advantage of seeing and hearing the witnesses'" (Al's Atl., Inc. v Shatma, LLC, 109 AD3d 491, 492, quoting BRK Props., Inc. v Wagner Ziv Plumbing & Heating Corp., 89 AD3d 883, 884; see Northern Westhester Professional Park Assoc. v Town of Bedford, 60 NY2d 492, 499).
Here, the Referee's finding that William Winkle violated the consent order and could therefore be liable for civil penalties is supported by the facts adduced at the hearing. Contrary to William Winkle's contentions, the Referee providently denied his purported request to re-call a witness in support of his defense (see People v Comerford, 70 AD3d 1305, 1306; Matter of Culbreath v Selsky, 286 AD2d 817, 817). Moreover, the doctrine of law of the case " applies only to legal determinations that were necessarily resolved on the merits in [a] prior decision'" (Strujan v Glencord Bldg. Corp., 137 AD3d 1252, 1253, quoting Erickson v Cross Ready Mix, Inc., 98 AD3d 717, 717 [internal quotation marks omitted]), and William Winkle identifies no prior legal determination the Referee overlooked in rendering her findings. Accordingly, under the terms of the consent order, William Winkle was subject to liability for the continuing violations on his property and civil penalties under ECL 71-1127 and 71-2503.
In considering "the amount of the civil penalty imposed, a court has broad discretion in choosing the amount of such a penalty so long as the court explains its choice and it is not disproportionate to the offense'" (Lake George Park Commn. v Salvador, 72 AD3d 1245, 1248, quoting Tatta v State of New York, 20 AD3d 825, 826; see ECL 71-1127[1]; 71-2503[1]). Here, contrary to Risi's contentions, the Supreme Court's assessment of a $650,000 civil penalty against him was proportionate to the scope of his wrongdoing (see State of New York v Williamson, 8 AD3d [*4]925, 930).
Nevertheless, we agree with William Winkle that the imposition of a civil penalty in the amount of $500,000 against him reflects an improvident exercise of discretion. Among other things, Risi, not William Winkle, performed the illegal work on Ruth Winkle's property. Further, Ruth Winkle agreed to the illegal work, not William Winkle, and she did so in part because Risi misrepresented that he had the lawful authority to perform it. William Winkle did not even own the affected property until after the plaintiffs commenced this action. Furthermore, while William Winkle did not submit an engineering plan in accordance with the terms of the consent order, he did convey his belief, with supporting evidence, that removing the fill and revetment would endanger the dwelling and other improvements on the property, and he sought the DEC's guidance as to what steps to take next. William Winkle then engaged with the plaintiffs in search of a mutually agreeable remediation plan, but factors beyond his control, such as Risi's refusal to cooperate, stymied those efforts. The plaintiffs point out that William Winkle never corrected the illegal condition on his property, but they fail to appreciate that the consent order places William Winkle under an obligation to obtain prior DEC approval for a remediation plan. The plaintiffs also insist that William Winkle gained economically from the violation, but the record lacks any evidence indicating that William Winkle has realized, or even could realize, such a gain. The plaintiffs also overlook evidence of William Winkle's meager income and substantial expenses related to the subject property in asserting that this record supports the conclusion that Winkle has the financial ability to pay the civil penalty and perform the remediation. In light of these and other relevant factors, the $500,000 civil penalty was disproportionate to the offense. Accordingly, as a matter of discretion, we reduce the civil penalty imposed upon William Winkle to the principal sum of $95,000.
We also agree with William Winkle's contention that the Supreme Court improvidently exercised its discretion in requiring him to return his property to its pre-violation condition. "The Supreme Court has discretion to fashion a suitable equitable remedy'" (LMT Capital Mgt., LLC v Gerardi, 97 AD3d 546, 547, quoting Town of Caroga v Herms, 62 AD3d 1121, 1125; see CPLR 3017[a]). Nevertheless, "the imposition of an equitable remedy must not itself work an inequity, and . . . specific performance should not be an undue hardship" (Van Wagner Adv. Corp. v S & M Enters., 67 NY2d 186, 195; see Marinoff v Natty Realty Corp., 34 AD3d 765, 767). Here, the consent order set forth a procedure through which William Winkle and the DEC would come to an agreement as to the appropriate means of remediating his shoreline. The plaintiffs' own witnesses at trial testified that William Winkle could request permission to incorporate new storm protection measures into the remediation plan. The Supreme Court's requirement that William Winkle return his property to its pre-violation condition causes an inequitable result by depriving him of that opportunity. Further, it may be impossible for William Winkle to return the property to its pre-violation condition in light of changes to DEC and New York City regulations. Accordingly, this matter must be remitted to the Supreme Court, Queens County, for a new determination regarding William Winkle's required remediation of the property consistent with current DEC and New York City regulations.
The remaining contentions of Risi and William Winkle are either not properly before this Court or without merit.
MASTRO, J.P., ROMAN, CONNOLLY and IANNACCI, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court