Moshkovich v Eliachov (2024 NY Slip Op 51267(U))

[*1]

Moshkovich v Eliachov

2024 NY Slip Op 51267(U)

Decided on September 12, 2024

Supreme Court, Kings County

Boddie, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on September 12, 2024
Supreme Court, Kings County

Lev Moshkovich, RUSLAN MALEVICH, 
 OLMA IV INC., and OLMA — XXI INC., Plaintiffs,

against
Igor Eliachov, VALERY ELIACHOV, OLMA STAR LLC, and OLMA SERVICE 21 GROUP LLC, Defendants.

Index No. 515877/2024

Plaintiffs' attorney: Vyacheslav Polyakov of Polsinelli PC, 600 Third Avenue 42nd Floor, New York, NY 10016, phone: (212) 803-9998
Defendants' attorney: Robert Melamed of Law Offices of Robert Melamed, 1502 Kings Hwy, Brooklyn, NY 11229, phone: (718) 375-5078

Reginald A. Boddie, J.

The following e-filed papers read herein: NYSCEF Doc Nos.
MS 1 9-18; 23-34
Defendants' motion for summary judgment to dismiss plaintiffs' first, second, third, and fourth causes of action is decided as follows:
 Background
This action arises out of a stock purchase agreement (SPA) in which the individual plaintiffs purchased ownership of OLMA IV and OLMA XXI from the individual defendants. Plaintiffs allege that defendants engaged in breaches of contract, fraudulent conveyances, and other wrongful acts, including unauthorized assignments of trademarks, misrepresentations [*2]regarding affiliate ownership and accounts receivables, and failure to transfer critical aspects of the business.
Defendants move for summary judgment, arguing that all of the plaintiffs' claims should be dismissed based on the unambiguous terms of the SPA and plaintiffs' own actions and omissions both before and after closing. Defendants assert that plaintiffs' breach of contract, fraudulent conveyance, trademark infringement, and business interference claims are meritless.
Defendants argue that the breach of contract claim must be dismissed because the SPA explicitly specifies the sale of OLMA IV and OLMA XXI, which are wholesale food businesses, and does not include any trademarks or the online retail business operated by OLMA Star LLC. Defendants assert that Provision 4.14 of the SPA clearly states that OLMA IV and OLMA XXI do not own any trademarks and specifically excludes any intellectual property from the sale. Furthermore, defendants argue that Provision 7.1 of the SPA contains a "no-survival" clause, which merged all representations, warranties, and covenants into the closing. As a result, defendants argue that any claims by plaintiffs regarding alleged misrepresentations or omissions made before closing are extinguished under the doctrine of merger.
Regarding the fraudulent conveyance claim, defendants argue that plaintiffs' allegations fail to meet the heightened pleading standards required by CPLR 3016(b), which mandates specificity in pleading fraud. Defendants assert that plaintiffs have not provided any particularized facts showing fraudulent intent or conduct, that the plaintiffs merely make conclusory statements, claiming that the trademarks were "supposed to" transfer under the SPA, which is directly contradicted by the terms of the agreement. Moreover, defendants argue that the fraudulent conveyance claim is duplicative of the breach of contract claim, and that a fraud claim cannot be based solely on a breach of contract under New York law without showing a legal duty independent of the contract.
Defendants also move for dismissal of the violation of New York General Business Law § 360-I claim, arguing that plaintiffs do not have standing to sue for trademark infringement because they do not own the trademarks in question. Defendants refer to documentary evidence, including the SPA and official trademark registrations, which show that the trademarks were owned by OLMA Service 21 Group LLC, a separate entity from OLMA IV and OLMA XXI, and were never part of the sale. Defendants further assert that plaintiffs operated the wholesale business for several months, during which time they shipped products to OLMA Star LLC, without raising any concerns about the trademarks.
Additionally, defendants argue that the claim for tortious interference with business relations should be dismissed because plaintiffs fail to allege the necessary elements with sufficient specificity. Defendants contend that plaintiffs have not identified any specific business relationship or contract that was interfered with, nor have they detailed any acts of interference by defendants. Defendants argue that the complaint merely contains vague and conclusory allegations that are insufficient to meet the pleading requirements under CPLR 3013.
Defendants stress the importance of the merger doctrine, arguing that once the closing occurred, any prior representations and warranties were merged into the final agreement, extinguishing any claims for pre-closing misrepresentations, and that the "no-survival" clause in the SPA reinforces this by clearly stating that no representations, warranties, or covenants would survive the closing except those explicitly stated. Defendants further argue that plaintiffs had substantial time to conduct due diligence before the closing, as they monitored the business for nine months and then took control of the wholesale operations for seven months after closing. [*3]Defendants argue that plaintiffs' failure to raise any issues during this period significantly weakens their claims and demonstrates that they were fully aware of the terms of the deal, and that the timing of plaintiffs' claims, made only after they defaulted on their payments, suggests that the litigation is an attempt to avoid their financial obligations. Defendants assert that the clear language of the SPA, the plaintiffs' actions post-closing, and the documentary evidence conclusively refute plaintiffs' claims, warranting dismissal of plaintiffs' first, second, third, and fourth causes of action.
In their opposition, plaintiffs argue that the motion should be denied because there are significant issues of fact regarding defendants' misrepresentations and breaches of contract. Plaintiffs assert that defendants misled them during the negotiation and sale of OLMA IV and OLMA XXI, inflating sales figures, concealing substantial liabilities, and transferring key trademarks without their knowledge, all of which materially affected the value of the business they purchased. Specifically, plaintiffs argue that defendants provided inflated sales figures that combined both wholesale and retail revenues, despite plaintiffs purchasing only the wholesale business, and that defendants failed to disclose significant liabilities, including over $111,500 owed to the landlord for back taxes and insurance, as well as additional invoices for repairs and unpaid vendor fees. Plaintiffs also allege that defendants engaged in unauthorized transfers of trademarks, essential to the OLMA business's branding and operations, violating several provisions of the Stock Purchase Agreement (SPA), including the requirement that the business be transferred free of any liens or encumbrances.
Furthermore, plaintiffs argue that defendants' reliance on the SPA's non-survival clause to dismiss the breach of contract claims is misplaced, because a non-survival clause does not shield a party from liability for fraudulent misrepresentations made to induce another party into entering a contract. Plaintiffs contend that defendants knowingly misrepresented the financial condition and assets of OLMA IV and OLMA XXI, which induced them to enter into the SPA. These misrepresentations, plaintiffs argue, are separate from the contract itself and constitute fraud.
In addition to the breach of contract and fraud claims, plaintiffs also assert that defendants violated New York General Business Law § 360-I by continuing to use the transferred trademarks, thereby diluting the value of the business and causing consumer confusion.
In reply, defendants argue that plaintiffs have misinterpreted the facts and relevant financial records, and that plaintiffs' inability to properly interpret these documents does not constitute fraud or misrepresentation on defendants' part. Defendants contend that the financial records, including tax returns, accurately reflect the business's sales figures, and any discrepancies noted by plaintiffs are minor and arise from comparing documents covering different time periods. Defendants reject plaintiffs' claims of fraud related to the business's trademarks, reasserting that the SPA clearly states no trademarks were included in the sale, and that plaintiffs' reliance on assumptions and due diligence failures do not amount to fraud by defendants. Defendants argue that plaintiffs have failed to meet the detailed pleading standard required for fraud claims under CPLR 3016(b). Moreover, defendants reassert that even if there had been misrepresentations, the merger doctrine—by which the terms of the SPA survive only in specific cases—would apply, extinguishing any claim of misrepresentation after the sale's closing.

Discussion
It is well established that summary judgment is granted when "the proponent makes a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to demonstrate the absence of any material issues of fact, and the opponent fails to rebut that showing" (Brandy B. v Eden Cent. School Dist., 15 NY3d 297, 302 [2010] [citation omitted]). Once the proponent has made a prima facie showing, the burden then shifts to the motion's opponent to present evidentiary facts in admissible form sufficient to raise a genuine, triable issue of fact (Zuckerman v City of New York, 49 NY2d 557, 562 [1980]). If there is any doubt as to the existence of a triable fact, the motion for summary judgment must be denied (Rotuba Extruders v Ceppos, 46 NY2d 223, 231 [1978]).
"Summary judgment is a drastic remedy and should not be granted where there is any doubt as to the existence of a material and triable issue of fact" (T. Mina Supply v. Clemente Bros. Contr. Corp., 194 AD3d 879, 881 [2d Dept 2021]). Upon a motion for summary judgment, the court's function is one of issue finding rather than issue determination (Sillman v Twentieth Century-Fox Film Corp., 3 NY2d 395, 404 [1957]). "It is not the function of a court . . . to make credibility determinations or findings of fact, but rather to identify material triable issues of fact (or point to the lack thereof)" (Vega v Restani Constr. Corp., 18 NY3d 499, 505 [2012] [citation omitted]).
"A written agreement that is complete, clear, and unambiguous on its face must be enforced so as to give effect to the meaning of its terms and the reasonable expectations of the parties, and the court should determine the intent of the parties from within the four corners of the contract without looking to extrinsic evidence to create ambiguities" (Wider Consol., Inc. v Tony Melillo, LLC, 107 AD3d 883, 884 [2d Dept 2013]). "Whether or not a contract provision is ambiguous is a question of law to be resolved by a court" (Van Wagner Adv. Corp. v S & M Enterprises, 67 NY2d 186, 191 [1986] [citation omitted]). "A contract is ambiguous if the terms are susceptible to more than one reasonable interpretation" (Archstone v Tocci Bldg. Corp. of New Jersey, Inc., 101 AD3d 1062, 1064 [2d Dept 2012] [citation omitted]).
Here, the express terms of the SPA make clear that the transaction involves only OLMA IV INC. and OLMA - XXI INC., both "New York corporations engaged in the business of wholesale of food." Provision 4.14 of the SPA unequivocally provides that "Neither Company 1 [OLMA IV INC.] nor Company 2 [OLMA - XXI INC.] owns any copyright, trade name, trademark, or registration or application therefor." This language leaves no ambiguity regarding the absence of any trademarks being included in the sale of these two companies. In the absence of any ambiguity, the court "look[s] solely to the language used by the parties to discern the contract's meaning" (Vermont Teddy Bear Co., Inc. v 538 Madison Realty Co., 1 NY3d 470, 475 [2004]). Accordingly, the SPA unambiguously supports defendants' position that the sale did not include any trademarks, and that plaintiffs never owned any of the trademarks which they now allege should have been transferred and are being infringed upon by defendants.
Additionally, the exhibits submitted by plaintiffs in support of their second and third causes of action utterly refute their claims: the assignment of trademarks from OLMA XXI, Inc. to OLMA Service 21 Group LLC occurred on May 5, 2022, more than half a year before plaintiffs entered into the SPA; additionally, the assignment of trademarks from OLMA Star LLC to OLMA Service 21 Group LLC was an agreement between two entities not subject to the SPA. Because plaintiffs never owned any of the trademarks they allege should have been transferred, and because the express terms of the SPA provide that no trademarks were intended by the parties to be transferred to plaintiffs, the complaint's second cause of action, which alleges [*4]that defendants "transferred assets, including trademarks, with the actual intent to defraud [p]laintiffs under New York's Debtor and Creditor Law (Article 10)," and the third cause of action, based on plaintiffs' claim that "[p]laintiffs own distinctive trademarks that were assigned as part of the SPA," must be dismissed. 
Regarding the first cause of action of breach of contract, plaintiffs allege in the complaint:
"Defendants breached the contract by the unauthorized assignment of trademarks (see Exhibits D and E), failing to pay for products sold through the retail website, misrepresenting affiliate ownership, retaining accounts receivable meant for Plaintiffs, misrepresenting the amount of the security deposit with the Landlord, falsely claiming that there were no outstanding obligations to the landlord, and failing to transfer the online retail business."
Plaintiffs further allege in their opposition papers that defendants provided inflated financial statements by including sales from both the wholesale and retail businesses, which led plaintiffs to pay an inflated purchase price, that defendants failed to disclose substantial liabilities, including over $111,500 owed to the landlord for back insurance and taxes and invoices for repairs and vendor payments totaling $127,227.29, and that defendants falsely represented the amount of the security deposit with the landlord and failed to assign the lease as required under the SPA.
"In order to maintain a cause of action alleging breach of contract, the plaintiff must establish (1) the formation of a contract between the plaintiff and the defendant, (2) performance by the plaintiff, (3) the defendant's failure to perform, and (4) resulting damages" (Davy v JP Morgan Chase & Co., 123 AD3d 870, 872 [2d Dept 2014] [citation omitted]).
Here, one key issue raised by plaintiffs is defendants' failure to meet their condition precedent of securing the necessary landlord consent for the lease assignment as required by Article VIII of the SPA. Provision 8.1.2 of the SPA provides that "[d]ocumentation evidencing consent to this Agreement and the transaction contemplated herein of every landlord whose names is set forth in Section 4.12 (to the extent required) shall be delivered to the Purchasers." However, communications from the landlord's counsel explicitly state that "the stock purchase of OLMA XXI Inc. by OLMA IV Inc. on 12/7/22 [occurred] without the consent of my client [the landlord], Saul Realty LLC, for the assignment and assumption of the lease in effect at the time of the closing." Dkt 33. This alleged failure to obtain consent creates a material factual dispute regarding whether defendants fulfilled their condition precedent under the SPA.
Furthermore, plaintiffs have raised a genuine issue of fact concerning undisclosed liabilities, as the landlord's counsel indicated that "OLMA XXI failed to pay property tax increases and insurance premiums dating back to 2015 through and including 2024 totaling $111,500.00." Dkt 33. These alleged unpaid obligations date back to 2015, which predates the SPA, thereby raising questions of fact regarding undisclosed liabilities. Accordingly, defendants' motion for summary judgment dismissing the first cause of action is denied.
As for the fourth cause of action, the elements of tortious interference with business relations are "(1) the existence of a contract between the plaintiff and a third party, (2) the defendant's knowledge of the contract, (3) the defendant's intentional inducement of the third party to breach or otherwise render performance impossible, and (4) damages to the plaintiff" (Bayside Carting, Inc. v Chic Cleaners, 240 AD2d 687, 688 [2d Dept 1997]; see Kronos, Inc. v [*5]AVX Corp., 81 NY2d 90, 94 [1993]; Tri-Star Light. Corp. v Goldstein, 151 AD3d 1102, 1105 [2d Dept 2017]). To state a cause of action for tortious interference with prospective contractual relations, a plaintiff must plead that the defendant directly interfered with a third party and that the defendant either employed wrongful means or acted "for the sole purpose of inflicting intentional harm on plaintiff" (Carvel Corp. v Noonan, 3 NY3d 182, 190 [2004]; see Posner v Lewis, 18 NY3d 566, 579 [2012]). "In such an action [t]he motive for the interference must be solely malicious, and the plaintiff has the burden of proving this fact" (M.J. & K. Co., Inc. v Matthew Bender and Co., Inc., 220 AD2d 488, 490 [2d Dept 1995] [citation omitted]).
Presuming the facts pleaded by plaintiffs to be true and affording their allegations every favorable inference, plaintiffs' fourth cause of action for interference with business relations fails as a matter of law. The critical element at issue here is whether defendants intentionally induced a third party to breach or otherwise render performance of a contract impossible. Plaintiffs have failed to provide any factual details beyond conclusory allegations, both in their complaint and in their opposition to defendants' motion, to substantiate their claim that defendants intentionally interfered with any specific contractual relationship.
Plaintiffs vaguely allege in their complaint that:
"Plaintiffs had established business relationships with customers and suppliers. Defendants interfered with these business relationships by disrupting business operations. Defendants acted with the intent to harm Plaintiffs' business prospects, using improper means. As a result of Defendants' interference, Plaintiffs have suffered damages in the amount of $500,000.00" However, plaintiffs do not identify any specific contracts or third parties that were subject to interference, nor do they allege any specific acts by defendants that would constitute intentional inducement of a breach. Plaintiffs also fail to specify any alleged intentional actions by defendants aimed at inducing a breach of such contracts or rendering performance impossible. Conclusory allegations without factual support are insufficient to state a cause of action of tortious interference with contractual relations (see Hersh v Cohen, 131 AD3d 1117, 1117 [2d Dept 2015]; Edward B. Fitzpatrick, Jr. Const. Corp. v Suffolk County, 138 AD2d 446, 449 [2d Dept 1988]). Thus, without any factual detail, plaintiffs' fourth cause of action must be dismissed.
Based on the foregoing, defendants' motion for summary judgment is granted to the extent that the second, third, and fourth causes of action of the complaint are hereby dismissed. The remainder of the motion is denied. Any argument not explicitly addressed herein was considered and deemed to be without merit or unnecessary to address given the court's determination.
E N T E R:
Honorable Reginald A. Boddie
Justice, Supreme Court